OPINION of the Court, by
Ch. J. Bibb
— Coffman exhibited his bill, setting forth that in 1776, Silas Har-land executed his penal bond to Cyrus M’Crackin, conditioned for the conveyance, by deed of general ¿warran-tee, of onehalfof his settlement and pre-emption on Salt river, and one half of Isaac Taylor’s pre-emption of 1000 acres; that said Cyrus assigned this bond to YVil-liam M’Crackin; that the obligor departed this life, leaving James Harland hisheiror devisee, who isin possession of the 1400 acres on Salt river ; that William M’Crackin had departed this life, leaving Pamelia his only daughter and heiress, who had intermarried with Richardson Allen ; that the complainant had instituted his suit in chancery against Ovid M’Crackin, and the said Richardson Allen and his wife, and in 1806, obtained a decree against them for the sum of 2828 dollars, besides costs, “ as by the records of your said court will more fully appear” ; that he took out execution against the estates of the said defendants, and that said Richardson Allen had assigned to the complainant the said obligation given by Silas Harland, in satisfaction of the decree ; that James Harland, the said representative of Silas, alleges the said bond to be a forgery, and refuses to comply with the conditions thereof; that the com-plaiaaat had informed iiidiardsoa Allen thereof, and *470 requested him to take back the bond and give the com» plainant the benefit of the decree, which he seemed willing to do, but observed he would in a short time settle the business, but has failed altogether so to do ; that he is advised that the right of Richardson Allen to assign over the bond, “ is at least very doubtful, without a regular conveyance from the said Pamelia, after privy examination and formal relinquishment of her right of inheritance in the premises to be secured by said bond.’51
To the end that James Harland may be compelled specifically to perform the said contract of his ancestor, or to pay the value of the land mentioned in the said condition, “ or in case the defendant Harland, should be successful in proving said bond to be a forgery, or in any way destroying the validity thereof; or if the defendant Pamelia, should refuse to relinquish her right of inheritance in said land,” so that such decree cannot be pronounced,; “ he then, prays that you will decree against the defendant Allen, the full value of said lands, to be ascertained by a jury empannelled for that purpose ; or such other decree as your honors may think right in the premises.” And therefore he prayed process against the said Richardson Allen and Pamelia his. wife, and said James Harland.
James Harland answered, insisting the bond set up>. as made by his ancestor was a forgery, that it was not the act and deed of his ancestor, &c.; upon this answer, there was general replication and commission to take depositions.
The subpcena being returned executed on Allen and wife, and they failing to appear or answer after a rule to that effect entered against them, the bill was taken pro confesse in the office. By consent of Harland and the complainant, the cause was set for hearing, and the defendants Allen and wife being yet in default, the cause was heard upon the bill taken pro confe&so as to them, and upon the issue as'to Harland ; whereupon the bill was dismissed as to Harland, because the said bond was “ a gross and palpable forgery,” and a decree pronounced farther “ that the contract between Allen and the complainant, be rescinded and holden for nought; that the complainant recover against said defendants, Allen and Pamelia his wife, the sum of 2828 dollars, the amount of the former decree of the said circuit court *471 referred to in the bill, with legal interest thereon front the 27th day of June 1806, the day of pronouncing said decree, until payment, also, 26 dollars and fifty-three cents, the costs of the former suit, and the costs of this, and that the complainant have immediate execution thereof” ; to this decree a writ ©f error is prosecuted by Allen and wife, with a supersedeas.
As to the manner of taking the bill pro confesso in the clerk’s office, upon the rules in the first instance, the court are perfectly satisfied that it was correct; and that the general practice is so, and warranted by the statute. The subpcena was returned executed, the defendants made default, a rule for answer was given, which having expired without answer, the bill was taken pro confesso, and afterwards confirmed in court. It is unnecessary to state the other errors assigned particularly, as the opinion of the court has been formed upon the fourth and fifth.
It is ^Jear that the decree is not warranted by any circumstances growing out of the assignment of the bond by the defendant Richardson, nor is it conformable to the particular relief prayed for: Pamelia, the wife, was no party to the assignment; she had not even subscribed her name to it ; nor was the jury empannelled to ascertain the value of the land mentioned in the assignment, according to the prayer of the bill, and the right of the case ; but the decree, as rendered, is an entire departure from the particular relief asked. So that it must be enquired whether it is justified by the general prayer for “ such other decree” as the court might think right. It was contended by the counsel for Coff-man, that the decree was well warranted by the bill and the general prayer.
It is evident from the whole constitution and complexion of the bill, that it is for a specific execution by James Harland, if to be had, if not, then for the value of the land mentioned in the assigned obligation, to be decreed against Harland, or against Richardson Allen, as the case might turn out. There was no obstruction to a decree for the particular relief prayed for against the defendant Richardson only ; and the question is, whether the party complainant was at liberty to abandon without cause this particular relief, and resort to another under the general prayer. It is settled that a complain *472 ant may, under the general prayer, ask for any relief that is agreeable to the case made in the bill, but not one which is different from the case — Cook vs. Martin, 2 Atkins 3 — Grimes vs. French, 141. And it seems within the reason of the rule, that where a bill has asked special and general relief, that the party may resort to bis general prayer, in case he cannot have the particular praver. And however this may seem to be questioned by the manner in which the case of Cook and Martin has been reported, yet it seems upon proper consideration of that casé, that the reason of requiring an amendment of the bill was, because the party could not have his particular prayer but might yet have had relief, if his case had been properly stated in his bill; the court therefore suffered an amendment to charge a general fund not stated in the bill, instead of the particular fund which the bill stated as liable, but which particular fund had failed. But the case will by no means warrant the conclusion, that a party may abandon the particular prayer in the bill, to the decreeing of which there is no obstruction, and thereupon to pray another relief at the bar ore tenas. There is no precedent found in the books of such a license, The reason of the law and of equity, is against it; for the defendant may be greatly surprised or prejudiced thereby. The utility of the general prayer conjoined with the particular prayer is, that if the latter cannot be decreed, then and not till then, a resort may be had to the former. In the case of Grimes vs. French, the court refused to let the party waive his claim for an annuity, by way of rent charge left under a will, and insist upon the land itself on which the annuity was charged. Upon the present bill therefore the decree is clearly erroneous, because it has abandoned the particular relief' prayed against Richardson Allen only for the value of the land included within his assignment, when there was no obstruction whatever to the making such decree.
There is no charge of fraud against Allen in making the assignment, nor of his knowledge of the forgery. There is no case made by the bill, which would call fpr any extraordinary interposition of the court of equity to decree Over again the decree formerly pronounced in the same court, not dormant or torpid by length of time or legal impediment, but capable of being enforced *473 3s sáon as the assignment which was accepted in satisfaction was removed. The most which the court should have done in case the original decree is to be enforced, was to annul the assignment taken in satisfaction of that decree, and then have suffered the original decree to have stood in force against the parties to it, without extending it beyond the terms of the decree. But the bill warranted no such resort to the original decree-, that was only cursorily stated as mere inducement to, and the consideration of, the assignment on which the present decree was prayed. The substance of the former bill and the history of the cause is not recited, nor were all the parties brought before the court, as every bill in nature of a revivor, supplemental, to carry a decree into execution, or such like, should do. But if it couid have been proper on the case as stated in this bill, to have resorted to the original decree as a substantive cause of another decree, yet it was unjust to involve the wife in the second decree extended beyond the principles of the first, when she was no party to the assignment, and could not have been implicated in the contract of her husband.- — —Decree reversed.