WRIGIIT, J.
delivered the opinion of the court. There are several important questions presented for consideration in this case.
Had Joseph Ruffner, in June, 1823, any legal interest in the six lots now claimed by the compilainants, which was subject to the lien of their judgment, liable to sale upon execution, so that they acquired by their purchase any legal or equitable estate?
Courts of law now look upon mortgages as mere security for a debt; and so firmly is this doctrine settled, that it is said to be an affront to common sense to hold a mortgagor in possession of the mortgaged property not to be the legal owner of it. The mortgagee, notwithstanding the form of the conveyance, has only a chattel interest, and the mortgage is only a security. Until foreclosed, or possession taken under it, the mortgage remains a chose in action ; and the mortgagor is the legal owner, as to all the world; 4 John. 43; 2 Bur. 978; 1 II. Blk. 117, and Note a.; 1 East 294; 6 John. 294; 2 O. 223. A mortgagor in possession has an interest which is bound by a judgment. •
The counsel for the United States Bank urge further, that at the date of the mortgage from Joseph to Abraham Ruffner, and also, when the Miami Exporting Company recovered their judgment, Joseph Ruffner had only an equity in these lots, which was not the subject of execution, because the legal title was in Betsey Drake when Joseph Ruffner executed the mortgage. When the com j}lain-ants recovered their judgments against him, he was in possession of the lots, claiming title under Betsey Drake, by virtue of a deed purporting to have been executed by her, in July, 1816, through the agency of an attorney in fact. The Bank of the United States, 252] ^claiming to hold under Ruffner the same title, finding a supposed defect in the power of attorney, under which the conveyance from Betsey Drake to Ruffner was executed, procured her to confirm the title to itself. The title is now set up as a distinct and independent one, disconnected from Ruffner’s title, under which the bank holds. The bank, by means of the conveyance from Ruffner, *257 procured the release from Betsey Drake, and now claim that' the title so acquired shall be held independent, exclude all reference to the Ruffner mortgage or deed, and in that way discharge their lots from the lien of the judgment and levy of the complainants. The case of Jackman v. Hallock, et al., 1 O. 314, is cited as sustaining this position. That case decided that a judgment at law was not íper se a lien upon amere equity. A trustee cannot enter into a contract on the subject of his trust for his own advantage; 1 John. Ch. 26; 5 John. Ch. 514; 7 John. Ch. 189. It is too clear to admit of controversy, that the deed from Betsey Drake to the Bank of the United States was obtained only as a confirmation of the title derived from Ruffner; 1 John. Ch. 27; 5 John. Ch. 497; 7 John. Ch. 174. The consideration of this conveyance passed from Ruffner to Drake, not from the hank, and the conveyance from Drake must be held as an incident to the title acquired from Ruffner, though the actual expense of procuring this confirmation maybe charged upon the mortgaged premises, as other prior encumbrances might be.
It is further claimed for the bank, that as the deed from Josejjh to Abraham Ruffner, of January, 1822, was absolute on its face, and of anterior date to the judgment under which the complainants claim, the lots in dispute were by the conveyance placed beyond the lien of the judgment; that the condition which constituted the mortgage existed only in parol, and established only an equitable mortgage, to which the judgment did not attach as a lien. It is now the acknowledged doctrine, that parol evidence is admissible against the face of a deed to show that a mortgage only was intended; 1 John. Ch. 594; 4 John. Ch. 167; 7 John. Ch. 40; 2 Atk. 99, 258; 3 Atk. 389, Powell on Mort. 65; 1 Day, 139; 2 O. 185 ; 6 John. Ch. 417; 15 John. 515. And whether a conveyance be a mortgage or not is determined by its object. If given as a security, it is a mortgage, whatever may he its form. This is so whether the condition of defeasance form a part of the deed is evidenced by other writing, or exists only in parol. The fact of its being given as security determines its character, not the evidence by which the fact is established. “A trust tacitly created,” this court said in Starr v. Starr, 1 O. 321, “is more difficult to reach than one that is *expressed, but when it is [253 ascertained, the same consequence is attached to it.” If this conveyance was a mortgage at its inception, no subsequent agreement can change its character as to intervening interests; 7 John. Ch. 40, 174; 2 Cowen 322; 1 John. Ch. 27; 5 John. Ch. 497; 1 Pet. 373. A conveyance once established asamortgage always remains so, except where it would operate fraudulently so to hold it, as against sub *258 sequent purchasers of the mortgagor without notice. But notice of a trust, whether secret or expressed, makes the assignee of it himself a trustee; 1 John. Ch. 566; 4 John. Ch. 136.
The proof satisfies us, that when the judgment was recovei-ed by the complianants, Abraham Ruffner held the six lots in question only as mortgagee of Joseph Ruffner. The event which constituted the condition upon which the conveyance to him was to become absolute, had not then happened; and Joseph Ruffner then held possession of the mortgaged premises, and continued in possession at the time of the levy and sale to the complainants. Joseph Ruffner consequently had an interest in the six lots subject to the lien of the judgment; 7 John. Ch. 206; 11 John. 534; 18 John. 97. This court, in Lessee of Ely v. McGuire, 2 O. 223, expressly decided that mortgaged premises might be sold on execution against the mortgagor, and that a mortgage older than the judgment could not be set up to defeat the purchaser at sheriff’s sale. See also 4 John. Ch. 40; 6 John. Ch. 290. The complainants then, by their purchase under the judgment, acquired all the interest that Joseph Ruffner, the mortgagor, then had in the lots. As purchasers at sheriff’s sale, they succeeded to his interest in the premises, and thenceforth occupied the same relation to the mortgagee and the mortgaged premises as Joseph Ruffner, the mortgagor, before occupied. The subsequent conveyance by Abraham Ruffner, the mortgagee, to the Bank of the United States, merely placed the bank in his shoes as mortgagee. Such a conveyance could have no effect to transfer to the bank any other interest than Abraham Ruffner, at the time of its execution, had to convey.
Did the bank purchase of Abraham Ruffner without knowing the extent of his interest? or under circumstances inducing the belief that it was deceived and put off its guard as to that interest so as to make it a fraud upon its rights, to hold the conveyance to it a mere transfer of Abraham’s interest? or did it take the premises in ignorance of the claim of the complainants? The purchase by the complainants was at a judicial sale, all proceedings relating to which were public, and preserved as a part of the records of the county. 254] *Is it not reasonable to suppose the agent of the bank was acquainted with such public transactions? and is it unusualfor courts to charge parties with constructive notice? Constructive notice, when established, is equally operative with actual notice. When the bank took the conveyance from Abraham Ruffner, had it no notice of the extent of his interest in the property? No purchase was made of Abraham by the bank, whatever bargain there was, *259 was made with Joseph Ruffner, who held the possession while the apparent legal title was in Abraham. The bank took a conveyance to itself from Abraham, but paid nothing to Abraham as the consideration of his conveyance. The deed covered property then estimated as worth $28,000; yet nothing was paid by the bank or Joseph to procure it, except only that Abraham was exonerated from liability as endorser upon some of Joseph’s paper, then held by the bank for a sum less than $9,000. These circumstances seem to us sufficient to awaken suspicion and put the bank on inquiry; and if it was so, the law infers notice. A purchaser under such circumstance cannot be held to be one fora bona fide consideration, ■ without notice, whose interest is to be protected; 3 O. 541; 2 Paige's Ch. 205.
It is urged that the answer of the bank, denying notice, cannot be overcome by circumstances. The general rule is, that where any material allegation of the bill is positively denied, on oath, in the answer, more is required than the evidence of one witness todo away the effect of the answer. But the answer of the bank is not within this rule — it is not on oath. The reason of the rule is, that the oath of one witness against the answer only balances oath against oath, and more is required to incline the scale. When the answer is not on oath, as in this case, the reason of the rule fails. There is no balancing oath against oath. A different rule prevails where the answer is without oath, or is that of a corporation, as is suggested by the Supreme Court of the United States in the Union Bank of Georgetown v. Geary, 5 Pet. 112. We think this suggestion indicates the general rule of practice, and therefore hold that an answer without oath, is a mere denial of the allegation in the bill analogous to the general issue atlaw; which requires of the complainant only common proof of the allegations denied. If we held the deed from Abraham to the bank absolute, discharged of the trust, that would operate to the prejudice instead of the benefit of the bank. It is a conceded fact in the case, that, as between the bank and Abraham Ruffner, no consideration passed, and that the deed was voluntary. Such a deed would be void against creditors, and the complainants are creditors. If made upon full or partial *consideration, however, with intent to defeat, prejudice, de- [255 lay, or hinder creditors, it would still be void, under our statute on frauds, as against creditors; 1 O. 326; 1 John. Ch. 481. But if actual fraud is not made out, and the conveyance was only given under such circumstances of suspicion as to induce the belief that all was not right, this court has power to make the conveyance sub *260 servient to equity, and hold it good as a security to the grantee for the consideration really paid, and subject to that encumbrance, to hold the estate amenable to creditors; 1 John. Ch. 481; 4 John. 536, 598, 9; 2 Sch. & Lef. 492; 2 Vesey, Jr. 516.
The case, then, is simply this. Joseph RufEner was indebted to the bank, and to secure the payment of the debt gave a mortgage on the land in Butler and twenty-two lots in Cincinnati. Abraham Ruffner was security upon a part of his brother’s debt, and Joseph, in order to indemnify him against loss, two days after his mortgage to the bank, mortgaged to Abraham the same property, together with seven other lots and also another piece of ground in the same city. After these mortgages he continued in the possession, and had control of all the property included in both mortgages. While so in possession, and before the bank had taken any measures to enforce payment of its debt by resort to the mortgage, security, or otherwise, the complainant recovered judgment against Joseph, levied execution on the six of the lots mortgaged to Abraham, and purchased them in at sheriff’s sale. More than two years subsequent to this, the bank, with full knowledge of all the facts, took a conveyance of the property from Abraham, and now claims to overreach the purchase of the complainants, and hold them discharged of their interest. When the complainants purchased, the bank held a large amount of other property to secure his debts, but held no claim on the six lots purchased by the complainants. Joseph’s interest in these lots was that of a mortgagor in possession. It was a legal interest subject to sale on execution. The purchase by the complainants was lawful, and operated to transfer to them all Joseph’s interest in the lots. Joseph was the real owner of the lots, subject to the encumbrance of the mortgage to Abraham. That encumbrance was limited to the making good the deficiency, if any, due the bank, after the property conveyed to it was exhausted. This court would have compelled the bank on Abraham’s application, first to appropriate the j>roperty it held as direct security, before it resorted to him. The bank had no right to resort to the six lots in dispute; they were not included in- its mortgage. Its remedy was against Abraham as security; and be, if injured, had a right to obtain 256] *indernnity from the lots. While so situated, the right of the complainants attached to the lots, and superseded that of Joseph Ruffner. The Bank of the United States stepped in and took the fee of the lots, knowing their situation, and must hold subject to the claims of the complainants. As to them, the bank took the place which Abraham Ruffner occupied when he conveyed. It is a well- *261 established rule in equity, and obviously a just one, that where one creditor has a lien on two funds, and another creditor has a posterior lien on one of the same funds, the creditor secured by the two funds must first resort to the fund which is not bound to the other creditor, in order that the other creditor may receive the benefit of his single security, so far as he can be allowed todo so without injustice. This rule holds, though part of the funds included in the first security may be in dispute or lie in another state; Hopk. Ch. 460; 4 John. Ch. 123; 19 John. 486; 2 Atk. 446; 1 H. Blk. 150. Nothing is urged to convince us that the application of this rule to the present ease will work any injustice, either to the Bank of the United States, or to any one else. The complainants, as creditors of Joseph RufEner, have obtained a legal lien on the six lots in question, subject to the prior lien of Abraham, as security for Joseph to the Bank of the United States. For the same debt the Bank of the United States has a lien on other property upon which the complainants have no lien, and it now holds Abraham’s lien on these lots also. Why should she not exhaust the fund exclusively held by her first, that if anything be left it may go to the complainants? That course can do no injustice. If she must be paid, she ought to be satisfied with simple payment. While if the other course is adopted the complainants are remediless, as Joseph RufEner is insolvent.
It is said that relief cannot be afforded, because the complainant’s title, if any, is a legal one, and their remedy is one for a court of law. We think otherwise. But to oust this court of jurisdiction, the complainants must not only have relief at law, but they must have that which is plain and adequate. How could a court of law afford relief jn this case ? The bank has the legal title, and must recover at law. But the title is of a nature capable of being defeated or modified in equity, where it can be fully examined into, so as to do justice to all persons interested. The practice in courts of law has provided noway to ascertain Joseph Ruffner’s debt to the bank, or the value of the property taken to secure it; and Ave are not aware of any mode of proceeding in a court of law, by which you could compel the bank to dispose of the fund it holds which is not claimed by the complainants, in order to learn whether the lots on *whioh they claim a lien are to be held altogether discharged [257 of the prior incumbrance, or only subject to the deficiency of Joseph Ruffner’s other property. How could a court of law find out the extent of that deficiency?
It is again urged, that the only relief this court can afford the complainants, is to let them in to redeem; and that even that can *262 not be afforded in this case, because there is no offer in the bill to pay the balance due, nor any money brought into court. It is true there is no direct offer in the bill-to pay the money due, nor specific prayer to be let in to redeem. There is, however, a prayer for such general relief as shall accord with the justice and equity of the case as it shall appear; and the case comes to hearing on its merits, not on a demurrer. At most, the omission is mere form, and this event is governed by substance, not form; 2 John. Ch. 248. For every purpose of substantial justice the bill is sufficient. The object of the complainants in resorting to this court is not simply to be let in to redeem. They desire to ascertain the extent of the bank claim; how far it is made secure by the other property; and whether it is disposed of; and if so, how the proceeds have been applied ?
. If it shall apjiear that the other property held by the bank is sufficient to satisfy its prior liens, there will be no necessity for the complainants to redeem. In that case, the application to redeem may come from a different quarter; the bank may possibly claim the privilege of extinguishing the judgment lien of the comjdainants, that its junior claims may be charged upon the premises. Let the case assume what aspect it may, a chancellor will find no difficulty in settling the terms of a decree, to guard the interests of the bank as perfectly, without an offer to redeem in the bill, as he could do if such offer was made. If there be any one aspect of the case made, which gives the court jurisdiction, it will hold the case, in order to do complete justice. Under the prayer for general relief, the complainants may have any which is consistent with the case made in the bill; 1 Bibb 472; 2 Atk. 3, 141. And sometimes, under particular circumstances, if all the parties are before the court, and the fault fully appear, chancery will, in furtherance of justice, grant relief, even more extensive and beneficial to the complainant, than he has sought, or prayed for in his bill; 1 Cox 58. It is well settled, that if a mortgagor would foreclose his mortgage, he must make the judgment creditors parties to the proceedings, otherwise his decree will not conclude them. The assumption for the bank claims to impart to their private contract with the Ruffners, an 258] *effect that would not have attended a judicial decree between the parties upon the subject of it. This assumption cannot be sustained.
It is further contended, that the complainants cannot have relief, because they are not judgment creditors of Ruffner. It is .said that the judgment is prima facie satisfied by the sale of the lots, and that the satisfaction must first be vacated at law, by scire facias, or other *263 wise, before this court will listen to them as creditors. This point •does not strike us as one of much force ; and, more especially, when we reflect that the pretended satisfaction of the judgment is only a. legal result from a sale which it is said passed nothing to the purchaser, and which this application is intended to make available. It is certainly not a very material matter to oppose to the holder of the fee of the lots, who comes into this court to remove an encumbrance from his title.
Upon the whole case, we are of opinion the complainants have a right to an account of the claims of the bank upon Joseph Ruffner when the mortgage to Abraham was executed, and of the value of the mortgaged premises, and have a right to compel the Bank of the United States first to enforce its claims upon the property to which it has an exclusive lien, and that the complainants may hold the lots they purchased at the sheriff’s sale chargeable only with the balance, if any, which remains due the Bank of the U. States after the proceeds of the property exclusively held by it are first applied, •deducting therefrom whatever sum, if any, has been paid to extinguish prior encumbrances, over and above the rents and profits, and we decree accordingly.
The case was referred to a master to take and state the accounts.
[Marshalling assets; Piatt v. St. Clair, infra, 261, 270; Downer v. Zanesville Bk. infra, 477, 480; Piatt v. St. Clair, 6 O. 227, 242.]