RUNYAN *against* MERSEREAU, JUN.

At law, as in equity, a mortgage is merely a security, and the mortgagee has but a chattel interest.

The freehold is in the mortgagor.

And the mortgagor, or the purchaser, or assignee of the equity of redemption, may maintain *trespass* against the mortgagee, or a person acting under his license.

A mortgage may be assigned, by mere delivery, without writing.

In an action of *trespass*, by a mortgagor, against a mortgagee, if the defendant plead *liberum tenementum*, the plaintiff may reply that the freehold is in himself.

THIS was an action of trespass, *quare clausum fregit*, to which the defendant, besides the general issue, pleaded specially:

1. Freehold in the assignees of *Joshua Mersereau*, under the insolvent act of 1811, and license from them to cut timber.

2. Freehold in himself.

3. Freehold in *Joshua Mersereau*, and license from him to cut timber.

To each of these pleas, the plaintiff replied, that the freehold was in himself, traversing that it was in the assignees, &c. and issues were taken thereon.

The plaintiff, at the trial, produced in evidence a deed from *Joshua Mersereau* to one *Leonard*, for the premises in question, dated *July* 15th, 1809; a judgment, in favour of *J. Mersereau* against *Leonard*, docketed 18th *January*, 1810; a *fi. fa.* issued thereon, and a deed from the sheriff of *Chenango*, of the premises in question, (whereby *Leonard's* equity of redemption was sold,) to the plaintiff, dated 4th *September*, 1810, under which the plaintiff took possession. The plaintiff proved that the defendant had cut trees on the premises.

The defendant then produced in evidence, an exemplification of a mortgage, from *Leonard* to *J. Mersereau*, dated the same day as the deed from *J. Mersereau* to *Leonard*, for 386 dollars, payable according to the condition of a bond, viz. 80 dollars in hand, 50 dollars on the 1st *May* then next, and the residue in annual instalments of 50 dollars each, with interest, annually. The recovery, by the judgment given in evidence by the plaintiff, was for the first instalment of 50 dollars, payable *May* 1st, 1810, and the annual interest on 300 dollars.

It was next proved, on the part of the plaintiff, that *J. Mersereau* delivered over to the plaintiff, in *August* or *September*, 1809, to secure certain debts due from the said *Mersereau* to different persons, the bond and mortgage, and that the plaintiff was to have the absolute control of them until the debts were paid, but that there was no written assignment. It did not appear that the debts were paid. The plaintiff produced the mortgage and

4

bond, which had been in his possession ever since their delivery.

The plaintiff produced the proceedings and discharge of *J. Merscreau,* under the insolvent act, in *June* 4th, 1812. By his inventory, which was given in evidence, it appeared, that there was due from *Leonard,* about 350 dollars on the bond and mortgage; and that it was the plaintiff who put the bond in suit, as above mentioned, and bought in the premises himself.

The jury found a verdict for the plaintiff for 10 dollars, subject to the opinion of the court, on a case, as above stated.

*H. Bleecker,* for the plaintiff. 1. In equity, in regard to mortgages, the real intent of the parties, without regard to the form of the transaction, is regarded; and, of late years, courts of law have followed the court of equity, in this respect, and look at the essence and substance of the contract. The interest of a mortgagee is regarded as a mere chattel, which goes to his executors, and it cannot be taken in execution. But the interest of the mortgagor has all the qualities of real estate, or an estate in fee. It may be conveyed or devised; it will pass to the heirs at law; it may be sold on an execution against his lands; it goes to pay debts. A mortgage is a mere pledge, or security, for the payment of the debt. Ought, then, the mortgagee to be allowed to enter and commit waste with impunity; if he may, he may destroy the houses, timber, &c. and the mortgagor will be without any remedy at law.

It is laid down, that though a mortgagee in fee, *in possession,* has a right, at law, to commit waste, because he is considered the absolute owner of the inheritance, yet, equity will restrain him, and decree an account to be taken of the trees cut down, and apply the amount, first, towards the interest, and then in sinking the principal of the debt.* Hence, it may be inferred, that a mortgagee out of possession cannot commit waste.

A mortgagee cannot enter, as Lord *Mansfield* expresses it, in *Eaton* v. *Jaques,†* *via facti,* but must resort to an action of ejectment. That was a case after a legal forfeiture and foreclosure. Until after a foreclosure, the mortgagee has only a chattel;‡ and in the case of *The King* v. *St. Michael's,§* Lord *Mansfield* said, it was an affront to common sense to say that the mortgagor was not the real owner. A mortgagee has no right to the possession until he brings ejectment. The right of possession cannot be

NEW YORK,
October, 1814.

RUNYAN
v.
MERSEREAU.

* *Cruise's Dig. Mortg. c. 2. s. 27. 2 Vern. ... 3 Atk. 723. Cro. Jac.* 172.

† *Doug.* 4to.

‡ *Powell on Mortg.* 246.

§ *Doug.* 630, 632.

NEW YORK, in both mortgagor and mortgagee; and if the mortgagor has the
October, 1814. right of possession, however small, he may maintain trespass.
RUNYAN A mortgagor, who continues in possession, must be presumed to
v.
MERSEREAU. hold with the consent of the mortgagee, and is considered as his
* 1 Inst. 4. b. lessee; and a lessee may maintain trespass against his lessor.*
3 Woodes. 251.

2. Again, the bond and mortgage were delivered by the mortgagee to the plaintiff, as a *pledge*, and something more, as a security for certain debts; and those debts not having been paid, all the rights of the mortgagee are gone. What security has a creditor who takes such a pledge, if he cannot protect it against the mortgagee? The law protects a pledge in the hands of the pawnee. But this was more than a mere pledge; the bond and mortgage were put under the absolute control of the plaintiff, until the debts were paid. He had authority to collect the money on the bond and mortgage, and to pay the debts. He had the absolute power over the bond and mortgage, and might sue for, and recover the money. The equity of redemption being sold under the judgment, the plaintiff became the purchaser, and has the title.

That the assignment of the bond and mortgage was not in writing, is no objection; for it may be by *parol*. A mere delivery is a sufficient assignment.† The rule at law and in equity is the same. Courts of law take notice of the nature of the transaction. The bond is the principal, and the mortgage is the incident, and when the debt is paid, there is an end of the mortgage.‡

† 3 Johns. Cas. 328. 1 Johns. Rep.580. Rob. on Frauds, 275, 276. 282, 283.

‡ 2 Burr. 978. Kunn.on Eject. 343.

*Vander Lyn*, contra. The freehold of *Leonard* was conveyed to *Mersereau*, the mortgagee, under whom the defendant showed a license to enter and cut timber. The question is, whether the freehold is now in the mortgagee, or in a purchaser, under a judgment on the bond of the mortgagor? As between the mortgagor and mortgagee, the freehold must be considered to be in the latter.

§ 10 Johns. Rep. 481. In *Jackson*, ex dem. *Ireland*, v. *Hull*,§ this court held, that where the mortgaged premises had been sold under a judgment obtained on the bond, that the mortgagee might, notwithstanding, recover the possession, in an action of ejectment, the sale under the judgment being only of the equity of redemption.

The notion, that mortgages are not within the statute of frauds, is derived altogether from a court of equity; and that

the assignment of the debt transfers the interest in land, grows out of the peculiar doctrine of the court of equity, which considers it as a trust by operation of law, and therefore within the express exception of the statute.* On the same principle, all equitable liens and deposites, which create implied trusts, are held not to be within the statute.

But, at law, a mortgage is a conditional sale of lands; and, since the statute of frauds, no interest in lands, for more than three years, can be transferred, without a formal conveyance in writing. In *Johnson* v. *Hart*,† *Radcliff*, J. though he admits the doctrine of the court of equity, that the debt is the principal and the mortgage the incident, and that a transfer of the note or bond would draw after it the mortgage, yet he regards this as an equitable right only; and that the transfer of the note or bond could not convey the *legal estate* existing in the mortgagee; that until there was a formal conveyance or assignment of the mortgage, the fee remained in the mortgagee; and that a contrary doctrine would confound all distinction between legal and equitable estates.

*H. Bleecker*, in reply, said, that the rule that the debt was the principal and the mortgage the incident, and that the transfer of the debt drew after it the mortgage, was as well established in courts of law as in equity.

In *Jackson, ex dem. Norton*, v. *Willard*,‡ the court held, that lands mortgaged could not be sold on an execution against the mortgagee, though the debt be due, and the estate of the mortgagee has become absolute. *Kent*, Ch. J. in delivering the opinion of the court, says, that the real nature of a mortgage, in the equity sense of it, has been repeatedly recognised in the courts of law, since the time of Lord *Hardwicke*. That " until foreclosure, or, at least, until possession taken, the mortgage remains in the light of a *chose in action*. It is but an incident attached to the debt, and, in reason and propriety, it cannot and ought not to be detached from its principal. The mortgage interest, as distinct from the debt, is not the fit subject of assignment; it has no determinate value. If assigned, the assignee must hold the interest at the will and disposal of the creditor who holds the bond." Nothing can be more full, clear, and explicit than the doctrine laid down in this case, and it leaves no room for doubt on the subject. The court, to be consistent,

NEW YORK, October, 1814.

RUNYAN
v.
MERSEREAU.
* *Rob. on Frauds*, 271. 278.

† 3 *Johns. Cas.* 326.

‡ 4 *Johns. Rep.* 41.

NEW YORK, must say, that the mortgagee, until he gets possession of the
October, 1814. land, or until foreclosure, has no interest in the premises, except
MERSEREAU   as a security for the debt.
v.
RUNYAN:

*Per Curiam.* This was an action of trespass, *quare clausum
fregit.* The plaintiff proved himself in possession of the *locus
in quo,* and showed a title derived under a judgment against one
*James Leonard,* who, it appeared, had mortgaged the land to
*Joshua Mersereau.* By the pleadings, the question presented to
the court is, whether the freehold was in the plaintiff, who had
purchased the equity of redemption, under the judgment against
the mortgagor, or in *Joshua Mersereau,* the mortgagee.

Courts of law, both here and in *England,* have gone very far
towards, if not the full length of, considering mortgages, at law,
as in equity, mere securities for money; and the mortgagee as
having only a chattel interest. Lord *Mansfield* (*Doug.* 610.)
says, a mortgagee, notwithstanding the form, has but a chattel,
and the mortgage is only a security ; that it is an affront to
common sense to say the mortgagor is not the real owner.
Mortgages are not considered as conveyances of land within
the statute of frauds, and the forgiving the debt, with the de-
livery of the security, is holden to be an extinguishment of the
mortgage. Mortgages will pass by a will not made with the
solemnities of the statute of frauds. The assignment of the
debt, or forgiving it, even by parol, draws the land after it, as a
consequence. The debt is considered the principal, and the
land as an incident only.

The interest of the mortgagee cannot be sold under execu-
tion. It is unnecessary to go into an examination of the cases
on this subject; they have been repeatedly reviewed by this
court. (3 *Johns. Cases,* 329. 1 *Johns. Rep.* 590. 4 *Johns.
Rep.* 42.) The light in which mortgages have been considered,
in order to be consistent, necessarily leads to the conclusion
that the freehold must be considered in the plaintiff, and he, of
course, is entitled to judgment.

Judgment for the plaintiff.