Gibson, C. J.
The acts of one eo-executor bind all the others, by reason of the confidence reposed in them individually, in consequence of which each has full power over the assets. With regard to administrators, who are the depositaries of no confidence whatever, but give security for the faithful performance of their office, this anomaly did not originally hold; the courts requiring, in accordance with the rules of the common law, the concurrence of all. But the law seems now to be settled otherwise, and their acts are (for the sake of uniformity, I presume,] put on a footing with those of executors. But this is immaterial in the investigation of a transaction, in regard to which the authority of persons who happen to be administrators, is derived neither from a testator, nor from' the register; and is therefore not to be qualified by an office which serves no other purpose than to designate them as individuals on whom a particular authority has devolved. The business cast on them, was not of a testamentary nature, nor within either their official security or the scope of their official powers, which have regard only to the personal estate. They had a new office, involving new duties, and creating new responsibilities. They were therefore trustees of an estate that might have been committed just as well to any body else, and by any other designation. Why should the-trust be qualified by'this designation, when in cases of devises to executors to sell for payment of debts, courts of equitj1- disregard it altogether, holding, notwithstanding the old distinction, that the executor shall in all eases be deemed a trustee, and the money treated as equitable assets, instead of going in a eourse'of administration; and this, whether the devise be of a naked power to sell in the capacity of executor, or the descent be interrupted by a devise of the land to the executor, and his heirs. I certainly do not pretend, that the produce of land sold to-pay debts, is equitable assets here, or that we have such a thing;- but, the chancery cases on the subject, of which the books are full, serve to show that where an executor is used as an instrument to convert land into money, he does not necessarily act. in his official capacity, although in regard to that particular duty, he be the depositary of the special confidence of the testator. What stronger circumstance is there in the case of executors or administrators, acting under an order of the Orphans’ Court? We have then the case of two trustees, who sold without any direction as to terms, and took, a mortgage for the purchase money, in which the trust i$ *338 recited; one of whom executes, in prejudice of the trust, and without the concurrence of the other, what would be in substance a release; and it is first material to inquire what are the legal, as distinguished from the equitable consequences of the act. The latter shall be considered in the sequel.
At law, where only the legal estate is regarded, the case would be considered as that of two joint mortgagees, neither of whom could release without the concurrence of his companion; the rule being indisputable, that no injurious act, (as this unquestionably was,")'of one joint owner shall prejudice the other. Two tenants in common of. an advowson bring square impedit, and one of them releases; yet the other shall recover the whole presentation, (Co. Lit. 197 B.) So, where one of two tenants in common of a wardship, releases to a person who has ravished the ward, the other shall, notwithstanding, recover. (Ib.) But it almost seems like affectation to use authority for a principle so familiar.
The consequence is, that Mr. Darragh’s acknowledgment of satisfaction, release, or substitution of the one mortgage for the other, (by whatever name it is called,) was invalid at law; and Mrs. Potts laid out her money, on the credit of a defective title known to be such at the time. By what possibility then, can she be a purchaser without notice? If there be any principle of equity established beyond dispute, it is, that he who trusts to any thing short of a legal title, perfect at least on the face of it, does so at his peril. Its imperfection, being obvious to the senses, is alone sufficient to put a purchaser on inquiry, and consequently to affect him with notice. In taking an assignment of a debt, secured by the second mortgage, under a belief that the lien of the first was discharged by a release which was defective at law, Mrs. Potts therefore acted at her peril; and, an error in the opinion delivered to the jury, on the basis of her being a purchaser without notice, cannot be assigned here, as the fact assumed does not exist.
But there is another, and an insuperable objection to her being protected as a purchaser without notice. It will hardly be denied, that if the acknowledgment of satisfaction had been executed by both of the mortgagees, the transaction might nevertheless have been unravelled between the original parties. And why? Because the mortgagor with a full knowledge of the circumstances, was a party to an act which is a breach of trust, and could therefore, gain no advantage from it. Then to come to the point. Here, both the trust, and the act which was a breach of it, appear on the pace op the mortgage deed. The whole arrangement is stated in the margin; and Mrs. Potts, if she knew any thing of the transaction at all, knew the whole truth. If then, the arrangement was originally a breach of trust, she afterwards became a party to it, with, at least, constructive notice of the circumstances, and stands in no better equity than Beltzhoaver himself, under , whom she claims as an assignee.
*339 . I have omitted to notice the defence of Young, the terre-tenant, because his improvements were, made, with the same means of knowlege which I have attempted to show, are sufficient to affect Mrs. Potts', and he is consequently to be postponed.
The question then stands as it would between the original parties; the inquiry being, whether, under the circumstances, equity would aid the defective execution of a release such as this, by considering it as an agreement, and decreeing it specifically. And it is an undoubted rule that no act of the trustee shall prejudice the cestui que trust.’ I shall not examine in what cases the trustee, may or may not change the nature of the trust estate, but refer to Mr. Fonblanque’s note, (1 Fonb. 167,) where the authorities are collected; with this single remark, that where the act of the trustee is at the time apparently prejudicial, a party having notice of the trust, can derive no benefit from it. There is no way to avoid the application of this rule to the case here, but to say that the parties beneficially entitled, had not an interest specifically in the mortgage; but, that the trustees having sold without any direction as to terms, might call in the mortgage money when they pleased; and having pledged the responsibility of themselves, and their sureties for the eventual payment over of the proceeds of the sale, the money stood at their risk, in the hands of the purchasers, and they might well treat as their own mortgage that was taken for their individual security. Fai; otherwise. The money, is in the place of land, in which the parties beneficially interested, had a specific interest; and after all the purposes for which it was converted have been answered, and no benefit can accrue to any one from having it called in, it would- be a narrow construction which would deprive them of the fortuitous advantage of real security, in addition to the personal responsibility of the trustees and their sureties. The very reason why a trustee cannot capriciously change the nature of the trust estate is, that the cestui que trust has a specific interest in it, which is to be regarded. The debts being paid, the parties beneficially interested, on coming of age, might have compelled the administrators to assign to them; and they have in effect, attained this object by suing on the mortgage to their own use; but they might at the same time have proceeded on the recognizance of the administrators, and their sureties. Nor can we inquire into their views in adopting the present course. They may pursue on all their securities, or favour particular parties, if they think proper, by pursuing on but one. Nor do I view as of the least importance, that the defective execution of the acknowledgment of satisfaction, has since received the sanction of the other mortgagee, of the guardian of one of the children, and of his ward after he had become of age; the acts of these cannot prejudice the other children. This, then being the case laid before the jury, I cannot perceive that the judge erred, in direcing a ver» ■diet for the plaintiffs.
*340 Duncan, J.
The case is very fully and clearly stated in the opinion delivered by the Court of Common Pleas, and the true questions-stated. That opinion, as to the power of one administrator, where there are more than ohe, to enter satisfaction on a mortgage given to the intestate, so as to discharge the lien as to the rights of third persons, bona fide acquired; I think cannot be questioned. Nothing can be clearer, than that receipt orsatisfaction entered by one administrator on a mortgage discharges the lien. The administrators represent the testator: they are but one person in point of law. One can dispose of the assets, receive money, enter •satisfaction, and do every act without the intervention of the others. This, I think, is the law. Public convenience requires that it should be so, and general usage proves the general understanding. Administrators may assign a mortgage; forthe assigneeof the administrator of a mortgagee may maintain an ejectment in his own name. Simpson’s Lessee v. Ammons, 1 Binn. 175. The money secured by the mortgage is assets; consequently, the executor or administrator has the power over it. I think I may lay down the rule safely, and in the broadest terms, that one executor cando any act — not so of trustees. The signature of one executor is sufficient, but not the signature of one trustee. The power of executors and administrators, as to the disposition of assets, is the same, though their authority proceeds from different sources: executors, from the will of the testator; administrators, from the letters of administration. Lands are equally assets for the payment of debts in the hands of an administrator as of ah executor: they may, in both cases, be taken in execution on judgments obtained, and sold by the sheriff. Mead v. Lord Orrery, (3 Atk. 235,) settled some very important principles; that executors may assign a mortgage, and that a disposition of assets, by an executor, is good at law, unless done collusively; and, where-ever the party has the legal estate for a valuable consideration, it must be a very powerful equity to take it from him. It likewise establishes, that notice of the mortgage being a trust for residuary legatees, and that the parties had notice, is not material. This notice, though material in cases of public trust, is not so in the particular case of an executor; for Lord Hardwicke very justly says, that this would extend to any case of a will; and, if this doctrine were to prevail of notice to the aissgnee of an executor, nobody would dare to purchase or take an estate from an executor. That distinguished Chancellor proceeds further, and says, “This is the first attempt, by a residuary legatee, to overturn an assignment by an executor of the assets of the testator. Creditors, even, though they have a demand against the executors for the whole of the assets after the account is made up, yet not by way of specific lien.” He denies that executors are to be considered as trustees, and that therefore the assignment was void, not having a tendency to the due administration of assets, and concludes by resting the assignment on its true ground; that is, fraud between the par *341 ties to the transaction, to the assignment, fraud in the executors. It is not pretended that there was any collusive act of the administrators here: the character of those who advised the measure, the character of the sureties in the indemnity bond, and the character of the guardian who assented to it, remove all imputation of collusion. These honourable men all supposed, that the second mortgage would be an adequate security; that Beltzhoover would be relieved by the substitution, and the estate of Davis not injured; and, if it was, the bond of indemnity would secure the administrators and guardian, and protect the estate of Davis from final loss. This agreement was assented to and ratified by all who could assent, and nothing but the fall of property, unexpected by all men, would have brought about any alteration or disturbance.
As between Beltzhoover and the administrators, the question would be a very different one: his conduct might be impeached by a concealment of the circumstance of the additional bond assigned to Poe being included in the mortgage, unknown to the administrator and guardian; though this might be very difficult to make out, when they had possession of the mortgage, when they received it in satisfaction, and acquiesced in the bond of indemnity. But, as to Poe himself, 1 have some doubts. As to Mrs. Potts, I have none, if she was an assignee bona fide of the debt secured by the mortgage, and advanced'her money on the strength of the bond being secured by the mortgage to Beltzhoover; that, as to her, if she stood in that situation, this mortgage, on. which satisfaction was entered on the margin of the record, could not affect her right, or postpone her claim. She has a superior equity to the administrators, for this is their suit; and, if Mrs. Davis could ratify the acceptance, she has done it: she has, on the record, ratified the acceptance; and her suit against Glaser, receipts of money on the second mortgage, ratified by Mrs. Davis, by the guardian, and by Thomas Davis, are of this character!
. As to Young’s part of the land, he now holds it discharged of all equity.' The entry of satisfaction clearly exonerated him; and, being exonerated at law, his equity is equal to that of the distributees, and superior to that of the administrators. He has since made valuable improvements; he might repose in safety, seeing the mortgage was satisfied. How could he bring suit against Beltzhoover, to compel him to satisfy a mortgage which had already been satisfied on record? This satisfaction-was good by one administrator, and the entry by one is a discharge at law; and there is nothing to affect the conveyance of Young, or of Mrs. Potts, the assignee.
As to those third persons, Mr. Darragh, nor the administrator, (after his ratification,) nor Mr. Hays, the guardian, nor the diátributees, can impeach it, on the ground of Mr. Darragh and Mr. Hays being ignorant of the contents of the second mortgage, which on record the^ acknowledge to have received in satisfaction of the first mortgage. And the presiding judge very properly *342 stated, that he had little doubt, that if Mr. Darragh had authority orginally to substitute the mortgage of Glaser for that of Beltzhoover, his conduct was such subsequent to the discovery of the imposition practised on him, as would have concluded those whose trustee he was, from recovering as against those who acquired an interest after the entry of satisfaction. But the error into which the court fell, however just and accurate, was the opinion of the acts of one administrator, ratified by the other in the most solemn manner of record, stating the satisfaction not to be valid, because, in this case, they acted not as administrators, but as trustees. Now, my opinion is, that they acted in the character of administrators; that their power was as administrators, and administrators solely; that the proceeds of the sale were assets in their hands, to be distributed in a course of administration; that they held the mortgage as assets for the payment of debts, and for distribution; that neither the creditors nor distributees had any lien on the mortgage. Whenever the Orphans’ Court have authorized administrators to sell, their authority over the real estate continues in their character of administrators, quo modo, assets from the granting of letters; that is, by petition to the Orphans’ Court, decree of the Orphans’ Court, sale returned, and confirmed.
' The first act of 1705, empowered them, in their character of administrators, to sell for the payment of debts and maintenance of children, on obtaining a decree of the Orphans’ Court for that purpose; and, even where there is a return of no children, it was decided in the case of Humphrey Fullerton, at Chambersburg, that the Orphans’ Court had power to direct a sale for the payment of debts where there were no children. Snyder’s Lessee v. Snyder, 6 Binn. 496. The act of 1794, under which this sale was made, does not change, in this respeet, the provisions of the act of 1705. The act of 1808, (Purd. Dig. 300,) makes no alteration, except that it directs the Orphans’ Court to require sufficient security from the administrators, conditioned for the faithful performance of the duties committed to them, on the sale of real estate. Nothing can more clearly prove, that the power is conferred on them in their character of administrators, than the consideration that they alone can exercise it. The Orphans’ Court can intrust to it to no one else; the deed could be executed by no one else: and the legislature, by the act of the 3d of Hpril, 1802, so construe the law; they provide for a casus omissus — the death of an administrator after sale and before conveyance. “ In all such cases, it shall be lawful for an administrator of the goods not administered on, of such intestate unto whom administration shall be granted, to and for the executors and administrators of the person so dying, to-make and execute deeds to the purchasers.”
Thus every line of every law enabling administrators to sell real estate grants them the power as administrators, and in the character *343 of administrators and no other, and makes the proceeds assets for the debts, and distributable to the next of. kin. The Court of Common Pleas considered the authority of the administrator quasi administrator ceased over the surplus arising from the sale of real estate, and that Diller v. Young, 2 Yeates, 261, settled the principle. It is apprehended that this is a mistake. He has control over the land as he has over the personal estate. The sale does not, by converting the real into personal estate, change the succession; the surplus goes .in the same proportions and interest as the land itself, but still it comes into the administrator’s hands in his character of administrator. I do not mean to say, that the administrator can i’elease the lien on lands without payment, as between him and the purchaser; but if he takes a mortgage,, and enters satisfaction, and there is a subsequent purchaser without notice, he holds the land discharged of the lien. What clearly proves the authority of the administrator’, is, that payment to him of the fund would only be legal payment; satisfaction alone, by him, be legal satisfaction. If he commits a devastavit, the act of 1808 provides for that very case: it requires him to give security, sufficient security, conditioned for the faithful execution of the powérs committed to him, in making such sale, and to account for and pay over the proceeds thereof, in such manner as the court shall legally decree: just the same security as is given in personal estate, the same distribution, and the same mode of settling the accounts. The administrator is a person appointed by the law, intrusted by the law, required to give security to the satisfaction of the court, as well with regard to the disposition of the surplus arising from the sale of real as of personal estate. His original bonds only comprehended the personal estate. Where a new duty is contemplated, a new security is required; a new administration bond to cover the proceeds of the sale.
An executor or administrator is, in some respects, a trustee: an executor, to distribute according to the direction of the will, an administrator according to the directions of the law. They do not take in their own right, but as trustees for others. Still, the distribution of assets by them is binding, unless there is collusion or fraud, which is not alleged here; and,, if it even were found, could . not affect third persons.
The administrators may have committed a devastavit, though there has been no fraud. I do not say whether they have, under all the circumstances; but it is pretty evident, by taking the bond, Mr. Darragh and Mr. Hayes, the guardians, considered they were running some risk, and they took ample security against it; not. only an indemnity, but an obligation, that the bond and mortgage of Glaser shall be sufficient security for the whole amount of Beltzhoover’s mortgage to the administrators. Satisfaction was intended to be entered, satisfaction was entered. It. was done for the *344 very purpose of discharging the land from the first mortgage: no one can doubt this. And I think, under all that has been done by both administrators, the entry of satisfaction and ratification, all that has been done by Mrs. Davis and the guardian since, that neither Young nor Mrs. Potts’ interest eould be affected by an allegation that this satisfaction was invalid. What would be the situation of the recorder, if this was not a legal satisfaction, he having given a certificate that there was no mortgage but the second unsatisfied? He would be responsible to Mrs. Potts, if on the faith of that certificate, she took an assignment of the bond secured by the second mortgage. For my own part, I think he never ought, because satisfaction was entered by one having authority to enter it. This appears to me to be the action of the administrators to disaffirm their own act, to the injury of innocent persons; an act which Mr. Darragh and Mr. Hayes considered they ran some, risk in doing, and from the effect of which they guarded themselves by the most ample security.
On the whole, my opinion is, that the judgment should be reversed, and a venire de novo awarded; because I think that each of the co-administrators had a power over the fund which each co-trustee may not possess; and, that as each administrator had all the rights and authority, the entry of satisfaction by one was good at law, and that there is nothing in equity to impeach either Young or Mrs. Potts. Co-trustees are, in. this respect, distinguished from co-executors: the receipt of one co-executor is sufficient; each executor, consequently each administrator, has power over the whole fund — all joining in giving the receipt, or entering satisfaction is not necessary, Toll. Exec. 485: though the entry of satisfaction might subject the administrator to an action for devastavit, still, as to innocent third persons, it would be quasi payment — payment which the administrators cannot gainsay. At law, as well as in equity, a mortgage is merely a security for the payment of money. A mortgagee has nothing but a chattel interest. Notwithstanding their form, mortgages are not considered as conveyances of land, within the statute of frauds. The assignment of a debt, or passing it, even by parol, draws the land after it as a conveyance. The debt is considered as the principal, and the land as an incident only. 11 Johns. 534. This chattel the one administrator had power to aliene, to assign, or to deliver up: he had the same dominion over it, as any other chattel of the intestate. The entry of the satisfaction is not necessary to the discharge of a mortgage, any moi’e than the dischai’ge of a judgment. The delivery of the mortgage, or any other discharge by an administrator would be sufficient, unless the act were fraudulent and collusive between the parties, and this would only affect parties to the fraud, not third persons, innocent, bona fide, and having an interest in the discharge of the mortgage.
*345 But, the. court being divided, the Chief Justice and Mr. Justice Tod being of opinion there was no error, their opinion prevails against the opinion of my brother Rogers and myself; Judge Huston, not having been present at the argument, and being connected with Mr. Hayes, the guardian, declining to take any part.
Rogers, J., concurred with this opinion.
Tod, J., concurred with the Chief Justice.
Huston, J., took no part, being a connexion of one of the parties interested; and the court, being equally divided,
Judgment affirmed.