No. 63.—THOMAS G. PRIOLEAU, plaintiff in error, *vs.* THE SOUTH WESTERN RAIL-ROAD BANK, defendant.

[1.] A bond under seal is, by the laws of South Carolina, assignable by indorsement, in blank, thereon.

[2.] It is well settled in South Carolina, that a bond may be transferred by assignment not under seal.

[3.] A power of Attorney to transfer a bond under seal, need not, itself, be under seal.

[4.] Where H A M, the original payee of a bond, had transferred the same to F K H; and afterwards, and when said bond (being a negotiable instrument) had been, by the assignee, negotiated and assigned to a third party, the said H A M made an entry of satisfaction as to said bond, in the Secretary of State's office, in Charleston, S. Carolina: *Held,* that said entry could not operate to defeat the rights of third persons, derived under said assignment.

Motion to distribute money, in Chatham Superior Court. Decided by Judge FLEMING.

Prioleau *vs.* The South Western Rail-road Bank.

A sum of money was in the registry of the Superior Court, of the County of Chatham, to be distributed under the order of the Court.   This sum of money was the proceeds of the sale of certain slaves, sold under foreclosure of mortgages, one in favor of the South Western· Rail-road Bank, against Samuel Prioleau, and one against General James Hamilton, in favor of Dr. Thomas G. Prioleau; and was brought into Court to be distributed under agreement.

The plaintiff in error presented to the Court the following claim to the fund :

On the first day of January, eighteen hundred and thirty-seven, in the State of South Carolina, the slaves were sold by Henry A. Middleton, to Samuel Prioleau.

In eighteen hundred and thirty-eight, Samuel Prioleau, in consideration of James Hamilton's having assumed the payment of a bond, dated the first day of January, eighteen hundred and thirty-seven, for twelve thousand dollars, (being a part of the purchase money of the negroes) of which he was the security, transferred the said slaves to the said James Hamilton.

James Hamilton mortgaged the said slaves to Dr. Thomas G. Prioleau, to secure him from loss as endorser of a note for ten thousand dollars, (a part of the purchase money,) which was discounted in the Bank of the State of South Carolina, and which was given for the purchase of· the negroes originally to Henry A. Middleton, and on which Samuel Prioleau was indorser, in his life-time.

On the twenty-eighth day of March, eighteen hundred and fifty-three, Thomas G. Prioleau, under the Statutes of the State of Georgia—the negroes being then in Georgia—foreclosed the said mortgage.

The following is the claim presented by the defendant in error :

On the first day January, eighteen hundred and thirty-seven, Samuel Prioleau and James Hamilton executed their bond to to Henry A. Middleton, for the sum of twelve thousand dollars, to be paid in three equal annual instalments, and on the

same day, to secure the payment of the said bond, Samuel Prioleau mortgaged these slaves to Henry A. Middleton.

On the twenty-eighth day of November, eighteen hundred and thirty-seven, Henry A. Middleton, under an order and decree of the Court of Chancery of Charleston, assigned and and transferred the said bond to Francis Kinloch Huger and Francis Kinloch, as *trustees under the said decree.*

On the twenty-fifth day of January, eighteen hundred and forty-three, an indorsement is made upon the said bond, that it is held as collateral security for a note of Henry D. Cruger, dated the second of January, eighteen hundred and forty-three.

There is a blank indorsement without date upon the said bond, as follows: "Francis K. Huger, by Attorney Henry A. Middleton.

Various payments are indorsed upon the said bond, as follows:

On the twelfth of January, eighteen hundred and thirty-eight, an indorsement of eight hundred and forty dollars, by

C. M. FURMAN, Cashier.

On thirty-first of January, four thousand dollars for the first instalment of the bond, and interest on the same, twenty-three dollars and seventy-eight cents.

C. M. FURMAN, Cashier.

On the first of January, eighteen hundred and thirty-nine, five hundred and sixty dollars, for one year's interest.

C. M. FURMAN, Cashier.

On the first of February, eighteen hundred and thirty-nine, four thousand and twenty-three dollars and thirty-three cents, for second instalment and interest from the first of January to date.

HENRY A. MIDDLETON.

On the fifth of February, eighteen hundred and forty-two, two hundred and eighty dollars in full of the interest.

N. M. MIDDLETON, Agent for
HENRY A. MIDDLETON,
and FRANCIS K. HUGER.

On the ninth of March, eighteen hundred and forty-two, five hundred and sixty. dollars, for interest to · first of February last.

## HENRY A. MIDDLETON.

On the thirtieth day of March, eighteen hundred and forty-two, Henry A. Middleton, under a decree of the Court of Chancery, assigned the mortgage to Francis Kinloch and Francis Kinloch Huger.

On the second day of February, eighteen hundred and fifty-three, the South Western Rail-road Bank, by affidavit under the Statutes of Georgia, foreclosed the said mortgage before Montgomery Cumming, one of the Justices of the Inferior Court of Chatham County.

It appeared in evidence, that on the twelfth of February, eighteen hundred and forty-four, Henry A. Middleton had indorsed upon the records, in the Secretary of State's Office, in Charleston, "satisfied in full, and discharged, together with the bond secured thereby."

This bond had been transferred to the South Western Rail-road Bank, as collateral security for debt due by Lynch Hamilton, dated the first day of March, eighteen hundred and forty-six.

All of these transactions, save the foreclosures, occurred in the State of South Carolina.

Under the above statement of facts, his Honor, Judge FLEMING, pronounced the following decision:

On the first day of January, eighteen hundred and thirty-seven, Samuel Prioleau purchased certain negroes from Henry A. Middleton, and gave his bond for the purchase-money, which bond was secured by a mortgage of the negroes purchased. This mortgage having been foreclosed by the South Western Rail-road Bank, the proceeds of the sale are claimed by Thomas G. Prioleau, under mortgage *fi. fa.* against James Hamilton.

I will state briefly how each party claims this money. The South Western Rail-road Bank claims that Henry A. Middle-

ton, the payee of this bond, under the Decree of the Court of Chancery of Charleston, assigned this bond and the mortgage securing it, to Francis K. Huger and Francis Kinloch as trustees under said decree. That Francis K. Huger, as surviving trustee, endorsed said bond, in blank, and delivered the same to the Bank of Charleston as collateral security. That the Bank of Charleston delivered said bond and mortgage, so indorsed in blank, to them the said South Western Rail-road Bank, by which they became the owners and proprietors of said bond and mortgage—that as such owners and proprietors, they have foreclosed the mortgage, and are entitled to the proceeds of the sale under their mortgage *fi. fa.*

Thomas G. Prioleau claims: That James Hamilton purchased the said negroes from Samuel Prioleau, and mortgaged them to him (Thomas G.) and that he is entitled to the proceeds of the sale, first, because the South Western Rail-road Bank had no legal title to the bond and mortgage, and therefore could not foreclose it; second, that said bond and mortgage had been fully paid off and discharged. On these grounds Thomas G. Prioleau claims that this money should be paid over to his mortgage *fi. fa. vs.* James Hamilton.

Two questions are thus presented for my decision: first, had the South Western Rail-road Bank a legal title to this bond and mortgage at the time of foreclosure? Second, has the said bond and mortgage been paid off and discharged?

First, as to the title of the South Western Rail-road Bank. The papers before me show, that Henry A. Middleton, under the order and decree of the Court of Chancery of Charleston, assigned this bond and mortgage to Francis K. Huger and Francis Kinloch, as trustees under said decree. I do not understand that the validity of this assignment is called in question. Even admitting that bonds are not negotiable, and that therefore, Henry A. Middleton could not, of himself, convey the legal title in this bond, yet I apprehend that a Court of Chancery, in a case where justice and equity required it, may, by its decree, vest the legal title to a bond in trustees, and that the said trustees could, in their own names, collect said bond,

Prioleau *vs.* The South Western Rail-road Bank.

for the benefit of the trust estate.   Counsel, however, if I un-
derstand him, does not make the question upon this assignment,
but upon the blank indorsement of Francis K. Huger, survi-
ving trustee, by Attorney, Henry A. Middleton.   Does this in-
dorsement convey the legal title?   Counsel contends that it
does not, for two reasons: first, because bonds are not negotia-
ble; second, because if negotiable, it being a sealed instru-
ment, the indorsement should be under seal; or if the indorse-
ment need not be under seal, yet that being indorsed by Attor-
ney, the power of the Attorney to indorse should be under seal.

At Common Law, bonds are not negotiable, but our Statute
has made them negotiable in a particular way, viz: *by indorse-
ment.*   (*Cobb's Dig.* 519.)   True, the Statute makes them ne-
gotiable in such manner and under such restrictions as are pre-
scribed in the case of promissory notes; and promissory notes,
to be negotiable, must contain *negotiable words, as required*
by the Statute of *Anne.*   (1 *Kelly,* 236.)   The only negotia-
ble words mentioned in the Statute of *Anne* are "order" and
"bearer"; must then a bond contain the word "order" or the
word "bearer", in order to be negotiable by indorsement under
our Statute?   I think not.   Undoubtedly there must be nego-
tiable words, but I think any word equivalent to the words
used in the Statute of *Anne* would be sufficient.   Is not as-
signs a negotiable word?   Is it not equivalent to the word or-
der?   If I promise to pay A B or his assigns, do I not prom-
ise to pay any one to whom he may order it paid?.   I never
saw a bond payable to order or bearer, and I never saw a pro-
missory note payable to assigns, and yet the statute makes
bonds negotiable by indorsement, in the same manner as pro-
missory notes.   I cannot suppose that the Legislature spoke of
these instruments otherwise than as they were known usually
to exist.   The statute is unmeaning, unless the Legislature in-
tended to make bonds payable to assigns, negotiable by in-
dorsement, in the same manner as notes payable to order were
negotiable by indorsement.   Any other construction, it seems
to me, would make the statute a nullity, for bonds are never
made payable to order or bearer—at least I have never seen.

such a bond. This view, I think, is indirectly sustained by the case in 1*st Kelly*, 75; for the Court there, in deciding that a bill of sale is not negotiable under our Statute, puts the decision not upon the ground that a bill of sale does not contain the word order or bearer, but upon the ground that the Statute includes only *liquidated demands for the payment of money or some article of property.* From this, I infer that but for this fact, bills of sale would have been negotiable, that is, negotiable although they do not contain the words order or bearer. My decision then is, that a bond payable to A B or his assigns, may be negotiated by indorsement, in the same manner as a note payable to order may be negotiable by indorsement.

The next question is, has this bond been indorsed? The indorsement is in these words: "Francis K. Huger, per Attorney, Henry A. Middleton". The proposition of Counsel here is, if I remember it, that the bond being under seal, the indorsement must be under seal. To this I reply, that the Statute does not say so. The negotiability of bonds is entirely the creature of Statute. If the Statute makes bonds negotiable by indorsement, I may not add to the Statute the words, "under seal". This, it seems to me, would be an act of judicial legislation. Promissory notes are negotiable by indorsement *not under seal;* the Statute makes bonds negotiable in the same manner as promissory notes; that is to say, negotiable by indorsement *not under seal.* The second proposition of Counsel is, that if the indorsement need not be under seal, yet that being indorsed by Attorney, the *power of the Attorney* should be under seal. I grant that an Attorney, to bind his principal under seal, must have a power under seal: but as the indorsement need not be under seal, neither is it necessary that the power to make it should be under seal. Besides, what right have third parties to make this question? The power of Middleton to sign Huger's name, it seems to me, can only be denied by Huger himself, or some one standing in his place.

The last question for my decision is, whether this bond has been paid off and discharged? On the twelfth day of February, eighteen hundred and forty-four, Henry A. Middleton en-

tered full satisfaction of this bond and mortgage on the records in the Secretary of State's office, Charleston, South Carolina. The South Western Rail-road Bank came to the possession of this bond and mortgage, subsequent to the entry of the satisfaction. Was the bond paid when the South Western Railroad Bank received it? This depends upon the question, whether H. A. Middleton had the right to enter satisfaction at the time it was entered; and this right depends upon the fact whether the bond, at the time of the satisfaction, had been negotiated, and in the hands of the Bank of Charleston. The blank indorsement upon the bond has no date; but a memorandum upon the bond shows that it was held by the Bank of Charleston as collateral security for the payment of a note dated on the second of January, eighteen hundred and forty-three. Am I not authorized to infer that the bond was indorsed, and in the hands of the Bank of Charleston, at the date of the note for which it was held as collateral security? There is no evidence that the bond ever again came to the possession of Huger or Middleton, or that they ever had the right to the possession. On the contrary, it appears from the affidavit of James G. Holmes, that the Bank of Charleston, in 1846, passed the bond to the South Western Rail-road Bank, who received it as collateral security for a debt due them. The satisfaction by Middleton, then, is a perfect nullity. Apply the principles contended for by the Counsel to his own case, and he is clearly not entitled to this money. He claims under Hamilton's assignment of his bill of sale from Prioleau; but bills of sale *are not negotiable.* (1 *Kelly*, 75.) Again, he claims that Middleton's power of Attorney to indorse, should be under seal; and yet, he claims the benefit of a satisfaction entered by Middleton, without showing any authority in Middleton to enter this satisfaction, under seal or otherwise.

It is ordered that the money in dispute be paid over to the South Western Rail-road Bank or their Attorneys.

W. B. FLEMING, <em>Judge E. D. Georgia.</em>

Whereupon, Counsel for defendant excepted to the said decision and judgment of the Court and says:

1st. That the Court erred in deciding that bonds were negotiable, by indorsement, in the same manner as notes payable to order were negotiable by indorsement.

2d. That the Court erred in deciding that a bond, although under seal, was negotiable and transferrable by indorsement not under seal.

3d. That the Court erred in deciding that the assignment of a bond was not necessary in order to convey the legal title to the assignee, a simple blank indorsement being sufficient.

4th. That the Court erred in deciding that the power of an Attorney to transfer a bond under seal, need not itself be under seal.

5th. That the Court erred in deciding that the entry of satisfaction of the bond and mortgage was invalid; and as the facts aforesaid do not appear of record, the defendant, by his Counsel, prays that this, his bill of exceptions, may be signed and certified, as required by the Statute in such case made and provided.

WARD & OWENS, for plaintiff in error.

LAW & BARTOW, for defendant.

*By the Court.*—STARNES, J. delivering the opinion.

Something was said in the argument, to the effect that the Court below had decided a question of fact which should have been submitted to the Jury. But this was not insisted on as error in that Court, and we must confine ourselves to the record.

[1.] The first ground of error brought to our attention by that record is, the decision of the Court that a bond under seal is assignable by indorsement in blank.

The bond before us was executed, indorsed and negotiated in the State of South Carolina; and the law of that State, the *lex loci contractus*, must control the question.

1. Let us, then, ascertain whether or not this bond by the law of the contract, was negotiable?

It is made payable to the payee and his assigns, and such a bond is negotiable in South Carolina. Indeed, it seems that an Act was passed by the Legislature of that State, in the year 1808, for the purpose of making all bonds negotiable, however made payable, and authorizing the assignee to sue upon them. (2 *Faust* 215. 1 *Brev. Dig.* 96. *Farmer vs. Baker & Leach*, 3 *Brev. R.* 548.)

We know that in Georgia such an instrument would be negotiable by the terms of the Act of 1799. 2. We must next inquire whether or not this bond was negotiable by blank indorsement. It would seem that upon elementary principles, as was held by Judge FLEMING, the effects of an indorsement, in blank, upon any negotiable paper, upon an instrument payable to A B and his assigns, for example, is equivalent to a transfer or assignment of the same. The effect of it, is, in short, but a permission to the assignee to write over the indorsement whatever is necessary to give him right and title. Such is certainly the signification of an indorsement upon a promissory note, according to the Law Merchant.

At all events, such is the law of South Carolina, and it governs this question. *Stoney vs. McNeil*, (*Harp. R.* 156.)

It is made the law of our State, too, if it were not so upon general principles, by the 25th section of the Judiciary Act of 1799, which declares that "all bonds and other specialties and promissory notes, and other liquidated demands, bearing date since the 9th day of July, 1791, whether for money or other thing, shall be of equal dignity, and be negotiable by indorsement, *in such manner* and under such restrictions as are prescribed in the case of promissory notes."

[2.] We are next asked to decide, whether or not a bond under seal can be assigned or transferred only by an indorsement or assignment under seal.

The rule that a sealed instrument can be transferred only by an instrument under seal, seems not to have been well settled or universal at Common Law. (*Crok. Eliz.* 436. 3 *Rep.* 63.)

The same appears to have been rigidly enforced only where the transfer was of the fee to real estate. (*Runyan vs. Mersereau*, 11 *John*. 534. *Dawson vs. Coles*, 16 *John*. 51.)

However this may be, the law is well settled in South Carolina, that a bond may be transferred by assignment not under seal. *Howell vs. Bulkley*, (1 *N. & McC*. 250.)

[3.] It was also insisted that error was committed by the Court below, that the power of Attorney to transfer a bond under seal need not, itself, be under seal.

This point is influenced by that last considered. If the payee or assignee may assign without a seal, there seems to be no good reason why a seal is necessary to the appointment of an agent or Attorney to do so for him—no reason why greater solemnity should be required in the qualification of the agent, than in the execution of the act which the agent is to perform.

[4.] And, finally, it is complained that the Court erred in holding that the entry of satisfaction on the bond and mortgage was invalid.

The entry of satisfaction which is relied upon by the plaintiffs in error, was made by Henry A. Middleton, on the 12th day of February, 1844, in the Secretary of State's office in Charleston, So. Carolina. It appears, however, from the record before us, that on the 28th day of November, 1837, under an order and decree of the Court of Chancery, Middleton assigned and transferred this bond to Francis Kinloch Huger and Francis Kinloch, as trustees; and this decree and assignment appear, here, unimpeached and of full force and effect. Subsequently, Francis Kinloch Huger, by Attorney, as surviving trustee, indorsed and transferred the bond to the Bank of Charleston, from whom it passed to the defendant in error. This assignment to the Bank of Charleston, as appears by a memorandum on the bond, was made on the 2d day of January, 1843. That it was legal, we have decided.

Under these circumstances we do not see, nor have we been told, how Henry A. Middleton could have had any right, after he had assigned the bond in obedience to the decree directing him so to do, to have made this entry of satisfaction; and es-

pecially do we not see how this could have affected the rights of the assignees who had received a negotiable security, by a prior indorsement and assignment.

Let the judgment be affirmed.