Two questions are presented by the appellant for consideration:First. That, by the marriage of the plaintiff with Power, the defendant and mortgagor, her bond and mortgage became extinguished; Second. That the mortgage of the plaintiff and Power to Lester operated as a release of the plaintiff's mortgage interest in the mortgaged premises. *Page 529 
It was a general rule of the common law that, where a man married a woman to whom he was indebted, the debt was thereby released. Thus, if the husband obligor took the obligee to wife, the bond was discharged at law, because husband and wife make but one person in law, which unity of persons disabled the wife from suing the husband. (Co. Litt., 264, b; 2 P. Will., 243; Bright on Husband and Wife, 18.)
Of late years material changes have been made in the law affecting the rights of husband and wife, both in this country and in England, and particularly in this State. The rule of the common law, which ignored the civil existence of the wife, and merged it, with all her rights, in that of the husband, has been modified or superseded. Modern legislation, in its march of reform, actuated by a wise and just policy, has, to some extent, swept away the despotism of the common law in this particular, and placed the wife, as to her separate estate, independent of the control of the husband, and declared her to have a separate legal existence and separate rights of action.
In this State, the Code and the acts of 1848 and 1849 have completely swept away the common-law rule which gave the husband rights in and control over the property of the wife. Now, every female, in respect to property owned by her at the time of marriage, continues its owner after marriage, with full power to use, control or dispose of it, in every particular, the same as if she had remained unmarried. Marriage no longer operates upon the property, but only upon the person: by it the estate of the female is no longer transferred to the husband, nor the right to use or control it. The statutes declare "that the property of any female who shall thereafter marry, and which she shall own at the time of marriage, shall continue her sole and separate estate, as if she were a single woman." This language is clear and explicit: it leaves no room for doubt or construction, and should receive at the hands of the court a faithful and fair application.
This plaintiff was not married until 1852, after the acts of 1848 and 1849; at the time she owned these bonds and mortgages — they were her separate estate, and the statutes declare *Page 530 
that such property shall continue her sole and separate property as if she were single. If single, no one would doubt her right to maintain this action. To hold that the marriage released the debt, would be to nullify the express language of the act. These statutes are inconsistent with the common law, and as both cannot stand, the latter must yield. The reason for the common-law rule, viz.: the unity of persons which disabled the wife from suing the husband, has also been repealed. (Code, § 114.) The wife has been admitted to separate rights of action as well as of property. Now a wife may maintain an action in her own name, concerning her separate estate against her husband or any other person. I am, therefore, of the opinion that these bonds and mortgages were not extinguished by reason of the intermarriage of the mortgagor and mortgagee, but that the wife may, notwithstanding, maintain an action in her own name for their foreclosure.
The second question is, did the mortgage to Lester operate to discharge or release the premises from the plaintiff's mortgage, or postpone it to the one to Lester. The execution and delivery of the mortgage to Lester did not pay the mortgage to the plaintiff; no consideration passed to her for the act; the defendant parted with no new consideration on its receipt— but took it as security for an antecedent debt due from the husband, and hence, no equity arises in behalf of the defendant against the wife, demanding that it operate as a discharge or release of the plaintiff's prior lien. Therefore, if the mortgage to Lester worked the release or discharge of the former mortgage, it must be upon some strict technical legal rule; it has no equitable basis to support it.
The effect of the mortgage to Lester, must be determined independent of any information of its probable effect communicated to the plaintiff before her execution of it; she doubtless executed the instrument with full knowledge of all the facts, and intended precisely what the law declares. It is apparent that the mortgage was not drawn or presented for execution with any intent of superseding the lien of her mortgage, because Lester had no knowledge of such mortgage; *Page 531 
and it is equally certain that she did not execute the mortgage for the purpose of superseding, discharging or releasing her lien, although she was willing to abide the legal consequences of the act.
As wife she had an inchoate right of dower in all the lands of which her husband was seised, the premises mortgaged to her, as well as the other lands mortgaged to Lester. The purpose of her joinder in the Lester mortgage undoubtedly was to extinguish that right; this is apparent from the instrument itself. She is therein described as wife: she acknowledges as wife: the terms used are the ordinary ones used in mortgages by husband and wife to bar the wife's dower; the mortgage covered many hundred acres not covered by the mortgage to her: it was without consideration on her part: it did not purport to affect her separate estate, or any lien or interest which she held in her own right; and it contained no words of release to operate upon a chose in action, or any words indicating an intent to operate upon her mortgage: therefore, if the plaintiff's interest as mortgagee could be released by joining her husband in a subsequent mortgage, it is apparent from the instrument itself that such was not the intent or understanding of the parties at the time it was executed, but that the sole object was to bar her inchoate right of dower.
A mortgage is a mere security, an incumbrance upon land. It gives the mortgagee no title or estate whatever. The mortgagor remains the owner, and may maintain trespass even against the mortgagee. (Runyan v. Mersereau, 11 John., 534; Kortright
v. Cady, 21 N.Y., 347.) A mortgage is but a chattel interest: it may be assigned by delivery, and cannot be seized and sold on execution. (Runyan v. Mersereau, supra.) Therefore the plaintiff had no estate or interest in the land covered by the mortgage to her, other than her inchoate right of dower, susceptible of release or conveyance by deed or mortgage, and hence no other interest was released by the mortgage to Lester. The mortgage indeed pledged the land as security for the debt, and authorized its sale to make the money in cause of default: nevertheless, the pledge was only *Page 532 
of such interest or estate as would pass by the instrument. An interest as mortgagee is not of that character.
A mortgage, like a quitclaim deed, contains no covenant of title. Either instrument operates only upon the present right of the party executing it; and an after-acquired right or title does not inure to the benefit of the grantee or mortgagee or purchaser on foreclosure. It is otherwise with a deed containing covenants of warranty, because such covenants would operate as an estoppel for avoiding circuity of action. As the plaintiff had no present interest or estate in the premises as mortgagee, her rights as such were not affected by the mortgage to Lester.
Neither point was well taken; and the judgment must be affirmed.