James, J.
Two questions are presented by the appellant for consideration: First. That, by the marriage of the plaintiff with Power, the defendant and mortgagor, her bond and mortgage became extinguished; Second. That the mortgage of the plaintiff and Power to Lester operated as a release of the plain tiff’s mortgage interest in the mortgaged premises.
*529 It was a general rule of the common law that, where a man married a woman to whom he was indebted, the debt was thereby released. Thus, if the husband obligor took the obligee to wife, the bond was discharged at law, 'because husband and wife make but one person in law, which unity of persons disabled the wife from suing the husband. (Co. Litt., 264, b; 2 P. Will., 243; Bright on Husband and Wife, 18.)
Of late years material changes have been made in the law affecting the rights of husband and wife, both in this country and in England, and particularly in this State. The rule of the common law, which ignored the civil existence of the wife, and merged it, with all her rights, in that of the husband, has been modified or superseded. Modern legislation, in its march of reform, actuated by a wise and just policy, has, to some extent, swept away the despotism of the common law in this particular, and placed the wife, as to her separate estate, independent of the control of the husband, and declared her to have a separate legal existence and separate rights of action.
In this State, the Code and the acts of 1848 and 1849 have completely swept away the common-law rule which gave the husband rights in and control over the property of the wife. How, every female, in respect to property owned by her at the time of marriage, continues its owner after marriage, with fall power to use, control or dispose of it, in every particular, the same as if she had remained unmarried. Marriage no longer operates upon the property, but only upon the person: by it the estate of the female is no longer transferred to the husband, nor the right to use or control it. The statutes declare “ that the property of any female who shall thereafter marry, and which she shall own at the time of marriage, shall continue her sole and separate estate, as if she were a single woman.” This language is clear and explicit: it leaves no room for doubt or construction, and should receive at the hands of the court a faithful and fair application.
This plaintiff was not married until 1852, after the acts of 1848 and 1849; at the time she owned these bonds and mortgages—they were her sepárate estate, and the statutes declare *530 that such property shall continue her sole and separate property as if she were single. If single, no one would doubt her right to maintain this action. To hold that the marriage released the debt; would be to nullify the express language of the act. These statutes are inconsistent with the common law, and as both cannot stand, the latter must yield. The reason for the common-law rule,' viz.: the unity of persons which disabled the wife from suing the husband, has also been repealed. (Code, § 114.) The wife has been admitted to separate rights of action as well as of property. How a wife may maintain an action in her own name, concerning her separate estate against her husband or any other person. I am, therefore, of the opinion that these bonds and mortgages were not extinguished by reason of the intermarriage of the mortgagor and mortgagee, but that the wife may, notwithstanding, maintain an action in her own name for their foreclosure.
The second question is, did the mortgage to Lester operate to discharge or release the premises from the plaintiff’s mortgage, or postpone it to the one to Lester. The execution and delivery of the mortgage to Lester did not pay the mortgage to the plaintiff; no consideration passed to her for the act; the defendant parted with no new consideration on its receipt-—■ but took it as security for an antecedent debt due from the husband, and hence, no equity arises in behalf of the defendant against the wife, demanding that it operate as a discharge or release of the plaintiff’s prior lien. Therefore, if the mortgage to Lester worked the release or discharge of the former mortgage, it must be upon some strict technical legal rule; it has no equitable basis to support it.
The effect of the mortgage to Lester, must be determined independent of any information of its probable effect communicated to the plaintiff before her execution of it; she doubtless executed the instrument with full knowledge of all the facts, and intended precisely what the law declares. It is apparent that the mortgage was not drawn or presented for execution with any intent of superseding the lien of her mortgage, because Lester had no knowledge of such mortgage; *531 and it is equally certain that she did not execute the mortgage for the purpose of superseding, discharging or releasing her lien, although she was willing to abide the legal consequences of the act.
As wife she had an inchoate right of dower in all the lands of which her husband was seised, the premises mortgaged to her, as well as the other lands mortgaged to Lester. The purpose of her joinder in the Lester mortgage undoubtedly was to extinguish that right; this is apparent from the instrument itself. She is therein described as wife: she acknowledges as wife: the terms used are the ordinary ones used in mortgages by husband and wife to bar the wife’s dower; the mortgage covered many hundred acres not covered oy the mortgage to her: it was without consideration on her part: it did not purport to affect her separate estate, or any lienor interest which she held in her own right; and it contained no words of release to operate upon a chose in action, or any words indicating an intent to operate upon her mortgage: therefore, if the plaintiff's interest as mortgagee could be released by joining her husband in a subsequent mortgage, it is apparent from the instrument itself that such whs not the intent or understanding of the parties at the time it was executed, but that the sole object was to bar her inchoate right of dower.
A mortgage is a mere security, an incumbrance upon land. It gives the mortgagee no title or estate whatever. The mortgagor remains the owner, and may maintain trespass even against the mortgagee. (Runyan v. Mersereau, 11 John., 534; Kortright v. Cady, 21 N. Y., 347.) A mortgage is but a chattel interest: it may be assigned by delivery, and cannot be seized and sold on execution. (Runyan v. Mersereau, supra.) Therefore the plaintiff had no estate or interest in the land covered "by the mortgage to her, other than her inchoate right of dower, susceptible of release or 'conveyance by deed or mortgage, and hence no other interest was released .by the mortgage to Lester. The mortgage indeed pledged the land •as security for the debt, and authorized its sale to make the money in cause of default: nevertheless, the pledge was only *532 of such interest or estate as would pass by the instrument. An interest as mortgagee is not of that character.
A mortgage, like a quitclaim deed, contains no covenant of title. Either instrument operates only upon the present right of the party executing it; and an after-acquired right or title does not inure to the benefit of the grantee or mortgagee or purchaser on foreclosure. It is otherwise with a deed containing covenants of warranty, because such covenants would operate as an estoppel for avoiding circuity of action. As the plaintiff had no present interest or estate in the premises as mortgagee, her rights as such were not affected by the mortgage to Lester.
Neither point was well taken; and the judgment must be affirmed.
Comstock, Ch. J.
Conceding that the intermarriage of the plaintiff and her mortgagor, Power, would extinguish the deb* and the security according to the principles of the common law, the first question is, whether that result any longer obtains since the '“act for the more effectual protection of. the rights of married women.” (Laws of 1848, ch. 200, p. 307.) By that act, it is declared that “ the real and personal estate of any female who may hereafter marry, and which she shall own at the time of the marriage, and the rents, issues and profits thereof, shall not be subject to the disposal of her husband, nor be liable for his debts, and shall continue her sole and separate property as if -she were a single female.” We think the plaintiff was within the protection of this statute. If the bond and mortgage in question had been given by some third person, it is conceded that her rights would not have been affected by her subsequent marriage. But the statute makes no distinction in favor of a husband who is himself the debtor.of the wife, antecedently to the marriage. In this case the bond and mortgage were the property of the plaintiff, which she owned at “ the time of her marriage,” and, by the letter of the act, they were to continue her “ sole and sepa-, rate property as if she were a single female.” There is maní *533 festly nothing in the language, and, we think, nothing in the general policy of this statute which will justify the discrimination suggested.
The plaintiff thus having a bond and mortgage which were in full force and effect, and her husband being the owner of the fee in the mortgaged premises, she joined with him in executing a mortgage to the defendant upon the same and other lands; and the remaining question is as to the effect of that transaction. A mortgage is not an estate in lands, but is a lien or security merely, which can have no existence separate and apart from the debt. (Kortright v. Cady, 21 N. Y., 347, and cases cited.) And from this it results, that, without a transfer of the debt, the lien or interest in the land is incapable of a sale or assignment. It is not true in this case, nor is it pretended, that the plaintiff intended to sell or pledge the debt which she held against her husband. If we regard her act, therefore, as in the nature of a sale, pledge or mortgage of her collateral interest in the land by which the debt was secured, the act was plainly ineffectual, and passed nothing either absolutely or conditionally. (Jackson v. Willard, 4 John., 41; Aymar v. Bill, 5 John. Ch., 570.)
The counsel for the appellant has referred us to the statute (1 R. S., 748, § 1), declaring that “ every grant or devise of real estate, or of any interest therein, shall pass all the interest or estate of the grantor or devisor, unless the intention to pass a less estate shall appear by express terms, or be necessarily implied in the terms of such grant.” The suggestion upon this statute is, that, in accordance with its terms, the mortgage in which the plaintiff united with her husband must be deemed to have passed all her interest conditionally to the defendant. But this is not so. The rule of the common law was, that conveyances and devises of land passed no more than a life estate, without express words of inheritance, or something equivalent thereto. This enactment was intended to abrogate that rule, and establish the opposite one. And clearly where, as in this case, the instrument, viewed as a grant or sale, absolute or conditional, cannot, in the nature of the case, pass any *534 interest at all, no question can arise as to the quantum of such interest or estate. The statute, in short, has no application to the present question.
But I see no reason to doubt that the plaintiff, although a feme covert, had the'power and right to release the lien of her mortgage, and in that manner extinguish it. And, as she could do this absolutely, so she might execute an instrument which would have that effect conditionally. The question, then, is, has she so released and extinguished her mortgage ? What she did was, to join with her husband in executing a junior mortgage to the defendant. The latter, I think, was capable of taking such a release, by which is meant that he had an interest in the premises which could be enlarged by the extinguishment of a prior interest, and the release might be contained in the same instrument by which his interest was created, both taking effect at the same time. If the mortgage to the defendant had declared in plain terms that the plaintiff intended to release, and did thereby release, her lien as mortgagee, as well as her inchoate right of dower, I see no reason why the intention would not have been effectuated.
. The question is, therefore, one of interpretation: The mortgage to the defendant was in the usual form, that is to say, it was, in form, a conveyance by the husband and wife to the defendant, his heirs and assigns, of thedands described, defeasible on payment of the sum of money mentioned in the bond of the husband. It contained no reference to any particular interest of the plaintiff, nor any words importing a release or . covenant not to enforce her mortgage. The parties are described as Melvin Power and Prudence his wife. What, then, is the fair construction of the instrument as against the wife ? At the time of its execution she had a prior mortgage on one parcel of the land described in' it, and she had an inchoate right of dower in the same parcel and in all the others. If a person, having a mortgage on land, but no other claim, should unite with the owner in a conveyance or mortgage .to a third person, it might be urged, with great force, that, the intention' was to have the instrument operate on the only interest which' *535 the party had. The argument would be forcible, because no other reason could be given for so uniting in the deed or mortgage. But the plaintiff was not thus situated. Her act was effectual as a release of her dower right in all the lands which the mortgage to the defendant embraced, and the instrument was in precisely thé same form it would have taken had she possessed or claimed no other interest in the premises. And this, we think, is the true exposition of the transaction. The case of Aymar v. Bill (supra) is in point. There B and 0 united in a mortgage to A, covering two parcels of land. One of the parcels was owned by them jointly, they having bought it of A, and having given the mortgage for the purchase-money. The other parcel was owned by B alone; ■ and he had given to C a prior mortgage upon it. The question was, whether C, by uniting in the mortgage upon both parcels, thereby released or in any way affected his own prior security upon one of them. The court held that his act was to be referred to the legal estate which he had in the other parcel. This construction, it was thought, gave a just and full operation to the instrument; and the first mortgage, therefore, retained its priority. . The plaintiff in the present case is a married woman, and she is entitled to a construction certainly not less liberal. Having an inchoate legal estate in dower in all the lands affected by her husband’s mortgage in which she joined, and the instrument being in the appropriate and usual form for incumbering that interest, we think we ought not to impute to her an intention of discharging the prior lien which she held as security for her husband’s debt.
It has been said on the argument that the actual intention of the plaintiff, as proved by the oral evidence, was to cut off her mortgage by this transaction. To this it must be answered: 1. The evidence itself is indecisive on this point; 2. The intention must be ascertained from the writings and the contemporaneous facts, and not from conversations,; 3. The judge who tried the case without a jury has not found that any such intention existed; and, if it were necessary to sustain bis judg *536 ment, the intendment of the ease would be that he found the contrary. The judgment must be affirmed.
Davies, Lott and Hoyt, Js., concurred.