Curia, per Woodworth, J.
The defendants excepted to the decision of the judge, excluding the chancellor’s decree and injunction as evidence. On the argument, this exception seems to have been waived. I shall, therefore, not notice it; but proceed to consider the remaining questions.
It is contended that the plaintiff was bound to prove the averment in his declaration, that letters patent for the lands mentioned in the covenant, had been delivered to, and accepted by Fulton. He covenanted to pay, when he should receive the patent. The pleas are non infregit conveniionem ; and nothing by descent. Is the averment admitid, by the pleadings ? Chitty observes, that there is, strictly, no general issue in covenant; for the plea of non est factum, only puts the deed in issue, and not the breach of covenant. It "is bad on demurrer, though it would be aided after verdict; 1 Chit. PI. 482. The reason given is, that such plea is too general; and two negatives do not make a good issue. 5 Com. Dig. Pleader, 622. In Walsingham v. Comb, (1 Lev. 183,) the breách assigned was, that the defendant was not seized in fee; and so had not performed his covenant. The plea was, that he had not broken his covenant. Verdict for the plaintiff. It was moved in arrest of judgment, that this was not an issue; it consisting of two negatives. The court at first doubted; but afterwards gave judgment for the plaintiff, on the ground that it was an issue argumentative and informal; for if he had not broken his covenant, he was seized in fee; and if he was not seized in fee, he had broken his covenant; so that it is not wholly immaterial. In Pitt v. Russell, (3 Lev. 19,) such a plea was held bad on demurrer; because two negatives cannot make a good issue. 5 Com. Dig. 622, (2 V. 5;) 2 Bl. Rep. 1312, S. P. But the defect shall be cured after verdict. In Hodgson v. The Hast India Company, (8 T. R. 278,) on a covenant for quiet enjoyment, the plaintiff alleged that A. B., lawfully claiming title under the defendant, entered. Several other breaches were assigned. Issues were joined *75 on some of the pleas; but to the plea of non infregit, &c., the plaintiff demurred. The counsel for the plaintiff argued that the plea was too general, because it attempted to put all the breaches in issue; and also the execution of the deed. In opposition to this argument, Gilbert v. Martin, (1 Lev. 114,) was cited, where it was holden, that on a covenant for not repairing, the deed was admitted, and the non-repair only put in issue. Lawrence, J. referred to Grilb. Hist. C. P. 155 ; where, speaking of the plea of non infregit conventionem, he says, the defendant ought to traverse either the deed or the breach; and both cannot be involved in this plea; because the gist of the action lies on the deed, which must be traversed by itself. Lord Kenyon, in delivering the opinion of the court, held, that the plea could not be supported; that it was only argumentative; and, therefore, an improper plea. Tidd observes in the action of covenant, the defendant must specially controvert the deed, or show that he has performed the covenant, or is legally excused from the performance of it; or admitting the breach, that he is discharged by matter ex post facto. 1 Tidd’s Pr. 593.
All that can be extracted from these authorities is, that the plea is argumentative, but not wholly immaterial; that it is bad on demurrer, but cured on a verdict.[1] The question, then, is, what does the plea admit ? It is clear *that the deed is admitted, and the breach merely put in issue. When the covenant is simply that the defendant shall do a certain act, independent of any condition precedent, there is no difficulty in understanding the meaning and application of the plea. In such a case, when the defendant says he has not broken his covenant, the argument derived from the plea is, either that he has performed the *76 C0yeiI'£yr*'’ or ^ íeSaHy excused from the performance, .or in some other :way, the plaintiff has released or discharged him. Thus, on a covenant to pay money, if the ¿efen5ant has paid, or there wás a tender and refusal, .or the -plaintiff had executed a release, the defendant might correctly affirm that he had not broken the covenant. The plea, although argumentative., must necessarily be understood in that manner ;■ for, if either of the alternatives specified had happened, how could it be said the .covenant was broken ? If it be said that this imposes a hardship on the plaintiff, by admitting a defence so general and uncertain, .the answer is,:that, he has voluntarily chosen -to go to trial on the plea, such as it is, rather than get rid of it by a demurrer. If, then,-the - defendant may prove any fact that shows He Has not broken "His coyenant, where the covenant is independent,-is he entitled, when the breach is assigned on a dependent covenant, to rest on the fact that the condition precedent has not been performed ? If the plea is to be understood, as I think it is, 'as denying every fact that constitutes a breach, I do not .perceive on what ground it can be contended that the plea admits the condi* tion* precedent,’ which must be proved by the plaintiff, if not ¡admitted by the pleadings. The effect of such a construction would be to limit the operation of the plea; to preclude the defendants from relying on-one of the grounds of defence, the non-delivery .of the" patent to -Fulton. If this" was not performed on the part of-the-plaintiff, the covenant of Fulton was not broken. In-order to assign a good breach," the .plaintiff must aver two things: that the patent was delivered, and that Fulton had not paid. Without this, no breach -is alleged. If the patent has not been delivered, the covenant on the part of Fulton is not broken. *When the defendant says, I have not broken my covenant, the assertion is general. It is the same as saying, I deny that on-any ground I have become liable on this covenant. Whether the defendant rely on the non-delivery of the patent, or that hé has paid on the day the money become due, is -not specified. He may rely on either under such a plea;" because the existence of either fact constitutes a per- *77 feet defence. The plea negatives the breach in toio.' If the x „ ii patent was not delivered, the covenant is not broken according to the meaning of the contract. It would, therefore, seem to me to be a contradiction in terms to say that the plea admitted the delivery of the patent, when that delivery is essential to make out the breach. If the plea is a denial of the breach upon any and every ground that may be assumed, upon what principle can the court narrow it and say the defendants did not intend to rest on the non delivery of the patent; that the covenant was not broken, because the plaintiff has not done what he was bound to do, before any question can be raised as to the defendants’ delinquency ? and this too, when it must be admitted that the covenant cannot be broken without such performance on the part of the plaintiff, or a legal excuse for the omission.
This is certainly a technical objection; and one that, very probably, the plaintiff might have obviated by proof, had it been deemed material so to do. But it was not done. The defendants, therefore, have a right to insist on it as cause for a new trial. It becomes unnecessary, for the purpose of deciding this cause, to consider the remaining questions raised; but as they are now before us, it may be the means of saving expense and further litigation, if they are disposed of on the present application.
The next question is, whether the defendants had any lands by descent from the covenantor. It appeared on the trial, that certain parcels of land in the city of New York, were conveyed, in fee, to Fulton, in 1818; that in May, 1814, Fulton and wife executed a mortgage on these lands ¿ that the money secured by the mortgage was payable in April, 1815 ; and that Fulton died in the month of February preceding. On this state of facts, the inquiry is, *whether, upon the supposition that the defendants are to be considered as taking by descent, their interest in the mortgaged premises is to be deemed equitable or legal assets.
The question depends on this: was the legal estate vested in the mortgagor ? However the law may be considered *78 in England on this point, as was observed in collins v. Torry, 7 John. 281, it is very clear that, in this state, our , ; / courts have gone greater lengths than the precedents m the English books, towards the recognition of the mortgagor’s estate at law. It is here the subject of sale on execution as real estate; and on the other hand, the interest of the mortgagee, before entry or foreclosure, is not the subject of such sale. The nature of the mortgagor’s estate, then, falls within the terms of the act, “lands and tenements whereof the debtor was seized.” In Hitchcock v. Harrington, 6 John. 290, C. J. Kent, in delivering the opinion of the court, observes, “ it is now the settled law in this court, and the same principle has been recognized in the court for the correction of errors, that the mortgagor is to be deemed seized, notwithstanding the mortgage, as to all persons except the mortgagee, and his representatives. When his interest is hot in question, the mortgagor, before foreclosure, or entry under the mortgage, is now considered, at law, as owner of the land; and it does not lie with his heir or assignee, to deny the seizin.” The decision re ferred to in the court for the correction of errors, will be found in 1 Caines’ Cas. Err. 47. The same doctrine was also recognized in Sedgwick v. Hollenback, 7 John. 380, where it was held that an outstanding mortgage without foreclosure, or previous possession under it, was not a breach of the covenant of seizin. There are several other cases in confirmation of the same principle. 11 John. 534; 4 id. 41; 15 id. 205, 319. [1]
*78-1 In the case before us, there was no foreclosure or entry; nor, indeed, could there be, as the mortgagor died before the *79 mortgage money became due. Consequently the mortgaged premises are legal assets in the hands of the heirs.
*The next question is, whether the estate came to the defen5ants as heirs; or whether they hold it as devisees. The will of Fulton was not drawn with professional still; and this question is involved in some uncertainty. I have examined it with considerable attention; but have not been able to remove the difficulties that lie in the way of their taking as devisees.
Plain words of gift, or necessary implication, are required to disinherit an heir at law. His title is plain; and cannot be defeated, unless there is a disposition of the subject to some person capable of taking. 2 Fonbl. 51. It is enough for the heir to say, it is not given to any one else. If it is not given to some other person, he cannot be excluded. He will take what is not disposed of, even against the testator’s intention. 2 Ves. jun. 225; 3 id. 493 ; 2 Fonbl. 51. There is no devise here, in express terms; and if there be any, it must depend on necessary implication. The testator gave to his wife, out of the profits arising from Ms steamboats, and that not proving sufficient, then out of any other property or profits arising from his estate real or personal, an annuity. He also gave tó his wife, out of the profits of his steamboats, or any other property real or personal, an annual allowance for each of his children. From the liberal allowance made for the wife and children, it may be presumed, the testator had no doubt of dying possessed of sufficient property to satisfy these bequests; and although there is a little variation in the words used in the bequest to the wife, from those in the bequest to the children, I think it is to be inferred that the annuity to the wife and cMldren was intended to be derived from the same sources. As to the latter, the expressions used are plain. “ Out of the profits arising from my steamboats, or any other property real or personal,” are words perfectly intelligible; nor is the construction of the sentence difficult. The profits, in both cases, were in the mind of the testator. Before the *80 words “ any other property real or personal,” the words, “ out of the profits arising from,” are clearly understood. This is the grammatical construction; and, I apprehend, corresponds *with the intent. In the bequest to the wife, the word property is used. The sentence reads thus: “ oirt of any other property or profits arising from my estate, real or personal.” The word property, as used, implies no more than profits. There is not, in the will, any intimation that, in any event, a sale of real estate was in contemplation. The future profits arising from steamboats or other property, were doubtless considered as likely to exist. The rents and profits were deemed ample to accomplish the object. This construction derives support from another part of the will. After giving various legacies, the testator adds, “ all my other property shall accumulate, the interest of each year be added to the capital, until the eldest of my children arrives at the age of 21 years.” The sense in which the word property is used is manifest; for it is explained. The interest of each year was the property in view. The accumulation was in reference to that; leaving the title to the real estate untouched. This clause is a farther illustration of the confidence the testator had, that the profits of his estate were ample; and needed not, in any event, the sale of his real estate. The will farther provides, that on the eldest child arriving at the age of 21 years, the accumulated property shall be divided into as many portions as there shall be children; that whatever sum shall become the portion of a daughter, she shall only have the interest of it during life; at her death, three fourths of the capital shall be divided among her children, as she shall determine, in such portions as they may respectively merit. If she has no child, she may will the whole capital. These clauses, in connexion with the preceding, show clearly what the testator intended, when he speaks of his property, and the portions of his children. It is money, the product of personal estate. Interest shall be paid on the sum that forms the portion. This is termed the capital. The will then points out how it shah be divided. The natural import of these expressions is applicable to *81 money, not land. It seems to me, there is nothing in the will to indicate a different intent. I think we have a right to presume that the testator had but little, if *any real estate, that was unincumbered. The mortgaged premises were charged with a large debt; probably to near the value. It does not appear that the testator was seized of any other. If this be so, it accounts for the testator’s not making a disposition of his real estate ; willing to leave it to the course of descent, and providing only for the application of the rents and profits, if any were received. Whether this be a solution or not, is immaterial. Whatever be the cause, I think the real estate was not devised. The testator appointed his wife and William Cutting, trustees to manage his estate, to fulfil.the terms and conditions of his will; and to be guardians of his children. Not a suggestion that they were authorized to sell. On the contrary, the language made use of, seems to forbid that construction. To manage an estate, is, in common parlance, as well as legal acceptation, no authority to part with the entire interest. With respect to the trustees, the intention seems to have been, to give them the powers of executors in relation to the personal estate; and, as to the real estate, and the infant’s share of the principal, that they should have the possession and management of both as testamentary guardians ; applying the interest and rents to the purposes of education and maintenance; and accumulating the residue, to be paid to their wards on their coming of age. If the annuities had been expressly' charged on the real estate, it would not have been a devise to the' trustees; and there are no other persons who can claim the character of devisees. I apprehend the will disposes of the personal estate only. The charge is only on the rents and profits. Besides, the charge, such as it is, is contingent, depending on the insufficiency of the steamboat profits, about which there is no proof. Jackson v. Burr, 9 John. 104, is very much in point. The testator directed his executors to pay his debts, and a certain sum to his wife, and legacies to his children; and ordered his executors to have his real and personal estate appraised; and that the heirs and legatees *82 should receive their several sums out of his estate in lands, goods and chattels. It was contended that this was a devise in fee, *charged with the payment of the legacies; but the court held there was no devise of the real estate; that the executors, at most, had a power to sell the lands; and if so, the estate in the lands, in the mean time, and until it was sold, descended to the heirs at law. My conclusion, therefore, is, that the defendants took by descent as heirs of the covenantor.
The only remaining question is, whether the jury ought to have inquired into the value of the land descended.
The plea is, that the defendants had not, at the commencement of the suit, nor at any time before or since, any lands, &c, in fee simple by descent; on which issue was taken. On the trial, the plaintiff falsified the plea.
It seems to be well settled by the common law, that where an action is brought against the heir, on an obligation made by his ancestor, in .which he has bound his heirs; in order not to be liable farther than the value of the land descended, it is necessary for him to confess the action, and admit the certainty, of the assets. If he pleads a false plea, which is found against him; or if judgment be given by default, or on any other matter or ground, without confessing and showing the certainty of the assets, the plaintiff shall have execution, as he should have for the debt of the heir himself on his own bond. The authorities are collected in 2 Saund. 7, note (4). If the heir had bona fide aliened the lands which he had by descent, before an action was commenced, he might discharge himself, by pleading that he had nothing by descent at the time of suing out the writ; and there was no remedy at law. The statute 3 and 4 W. & M. s. 5, 6, altered the common law in two respects: 1. By declaring that the heir should be answerable to the value of the land sold or aliened, and that to the plea of riens per discent, the plaintiff might reply that he had lands before the original writ brought; and if the issue was found for the plaintiff, the jury should inquire of the value of the lands, upon which execution should be awarded against the heir. This statute further provides, that if judgment *83 &*Yen aSa™st the heir by confession of the action, with-out con^ess™S ^e assets descended, *or upon demurrer or nil dicit, it shall be for the debt or damages, without any to 0f the value of the lands. Whenever the pMntiff replies according to this statute, he is not entitled to a general judgment, as he was at common law; but can only recover the value of the land, which the jury must find. 2 Saund. 7, note (4) ; Carth. 354; 5 Mod. 119, 122, 123; 10 Mod. 18, 19. It is also laid down in 2 Saund. 7, note (4,) that if the heir has not sold the land, the plaintiff may reply according to the statute; and aver that the defendant had lands from his ancestor before suit brought. The jury are obliged in that' case, to assess the damages. It will be seen, that under this issue, the allegation of the plaintiff is made out, either by proving that lands descended which the defendant aliened, or merely that lands descended which had not been aliened. In either case, the defendant necessarily had the land before suit brought. Whenever the plea of rims per discent is pleaded, the plaintiff may reply according to-the statute; or he may take issue on the plea, and say that, on the day of issuing the writ, the defendant had sufficient lands by descent, and conclude to the country; which is the form of the replication at the common law. In that case, if the verdict is for the plaintiff, no value is assessed; but a general judgment entered. The replication under the statute varies only as to the time of having assets; alleging that, before the suing out of the writ, the defendant had sufficient lands by descent. The statute has altered the common law in this respect; that when a verdict is found for the plaintiff on the replication given by the statute, the plaintiff is entitled to recover the value of the lands descended. 2 Saund. 7, note (4.)
The view thus taken, is in reference to the law on this question in England. Our statute, (1 R. L. 316,) was passed for the relief of creditors. It has incorporated the 3 and 4 W. & M. ch. 5. s. 5, 6, on which I have remarked. It has also enlarged the remedy, by allowing every creditor, whether by simple contract or specialty, and whether the heirs are mentioned or not, to maintain an action. On *84 *the question when, and in what cases the jury are to find the value of the land, our statute and the English are alike. The second and fourth sections are connected; the one making the heir liable when he has aliened before suit brought, the other declaring that, to the plea of riens per discent, at the time of the commencement of the action, the plaintiff may reply that the heir had lands from his ancestor before com mencement of such action ; and if found for the plaintiff, the jury shall inquire of the value. In every other case, there is no inquiry as to value. If the issue is not found under the statute, or the judgment be by confession, demurrer or nil dicit, it is for the debt and damages, without any writ to inquire of the lands descended.
The question here, whether damages ought to have been assessed, depends on the form of pleading. Have the defendants pleaded riens per discent at the time of the commencement of the action? The plea is, that they have not, at the commencement of the suit, nor at any time before or since, had any lands, &e., by descent. This plea is more extensive than the plea mentioned in the statute, to which the plaintiff may reply as the statute directs; but it contains the specific fact, and is not the less such a plea as the statute speaks of, because it contains additional matter. It was perhaps drawn in this manner to render a rejoinder unnecessary, by negativing a fact which the plaintiff was bound to allege in his replication, in order to bring the case under the 6th section of the act; and thereby make the assessment of damages proper. To this plea, the plaintiff replied that the defendants have, and before and at, and after the commencement of the suit, had sufficient lands, &e. Although the issue is joined on several facts, it is enough that there is an issue on the fact whe-, ther the defendants had lands by descent, before the commencement of the action. By replying in this manner, the plaintiff brought his case under the statute, and thereby the inquiry as to the value of the lands was indispensable. It was not at the election of the plaintiff to proceed under the statute, or rest upon the common law. *That *85 his replication is under the statute.is evident, because it alleges the facts there specified, and because such facts coup^ not pe repped at the common law. It was competent for the plaintiff to have replied differently, and alleged that, at the commencement of the suit, the defendants had lands by descent; and if found for him, there would be a general judgment. That might have been done with safety, as it is not pretended there has been an alienation. The jury then ought to have assessed the value ; but as the plaintiff consents that the judgment be entered, to be levied of the lands descended, I should not incline to grant a new trial on this point, should the defendants refuse to accept the offer.
On the whole, I am of opinion that a new trial be granted, .with costs to abide the event, on' the ground that the averment of a delivery of the patent was not admitted by the plea of non infregit conventionem.
Hew trial granted.

 See Church v. Filman, 15 Wend. 650 ; Dyett v. Pendleton, 8 Cowen, 727; Fidler v. Delevan, 20 Wend. 57; The Steuben County Bank v. Mathewson, 5 Hill’s N. Y. Rep. 249 ; Fletcher v. Peck, 6 Cranch, 121; Spencer v. Southwick, 9 Johns. Rep. 313 ; 10 Peter’s Rep. 343; Savery v. Joe, 4 Wash. C. C. Rep. 140; Atwood v. Caswell, 19 Pick. Rep. 493; Austin v. Parker, 13 Pick. 222; Bean v. Farnham, 6 Pick. 269; Spear v. Bicknell, 5 Mass. Rep. 125; Rakes v. Pope, 7 Ala. 161; Hurst v. Purvis, 5 Blackf. Rep. 557.
See N. Y. Dig., tit. Pleading.

 On this subject, Mr. Kent, (4 Kent’s Com. 154, et seq.) remarks:—
Upon the execution of a mortgage, the legal estate vests in the mortgagee, subject to be defeated upon performance of the condition. There is usually in English mortgages, a clause inserted in the mortgage, that until default in payment; the mortgagor shall retain possession. This was a very ancient practice, as early as the time of James the Eirst; and if there be no such express agreement in the deed, it is the general understanding of the parties and, at this day, almost the universal practice, founded on a presumed or tacit assent. Technically speaking, the mortgagor has, at law, only a mere tenancy, and that is subject to the right of the mortgagee to enter immediately, and at his pleasure, if there be no agreement to the contrary. He may, at any time when he pleases, and before a default, put the mortgagor *78-1 out of possession, by ejectment, or other proper suit. This is the English doctrine, and I presume it prevails very extensively in the United States. The mortgagor cannot be treated by the mortgagee as a trespasser, nor can his assignee, until the mortgagee has regularly recovered possession, by writ of entry or ejectment. The mortgagor in possession is considered to be so with the mortgagee's assent, and is not liable to be treated as a trespasser. The mortgagor is alio wed, in Hew York, even to sustain an action of trespass against the mortgagee, or those claiming under him, if he undertakes an entry while the mortgagor is in possession. It was anciently held, that so long as the mortgagor remained in possession, with the acquiescence of the mortgagee, and without any covenant for the purpose, he was a tenant at will. This is also the language very frequently used in the modern cases; but its accuracy has been questioned, and the. prevailing doctrine is, that he is not a tenant at will, for no rent is reserved: and so long as he pays his interest, he is not accountable, in the character of a receiver, for the rents. The contract between the parties is for the payment of interest, and not for the payment of rent. He is only a tenant at will, sub modo. He is not entitled to the emblements, as other tenants at will are; and he is no better than a tenant at sufferance, and is not entitled to notice to quit before an ejectment can be maintained against him. But whatever character we may give to the mortgagor in possession,.by sufferance of the mortgagor, he is still a tenant. He is a tenant, however, under a peculiar relation; and he has been said to be a tenant from year to year, or at will, or at sufferance, or a quasi tenant at sufferance, according to the shifting circumstances of the case; and perhaps the denomination of mortgagor conveys distinctly and precisely the qualifications which belongs to his anomalous character, and is the most appropriate term that can be used. "
It is the language of the English books, that a mortgagor, being in the nature of a tenant at will, has no powor to*lease the estate; and his lesse'e upon entry (but not the mortgagor) would be liable to be treated by the mortgagee as a trespasser, or disseizor, or lessee, at his election. This is supposed by Mr. Coventry to be the better opinion. The lease of the mortgagor is said to amount to a disseizin of the mortgagee, which renders the lessee upon entry a wrong-doer. But the justice and good sense of the case is,'that the assignee of the mortgagor is no more a trespasser than the mortgagor himself; and the mortgagor has a right to lease, sell, and in every respect to deal with the mortgaged premises as owner, so long as he is permitted to remain in possession, and so long as it is understood and held, that every person taking under him takes subject to all the rights of the mortgagee, unimpaired and unaffected. Her is he liable for the rents; and the mortgagee must recover the possession by regular entry, by suit, before ho can treat the mortgagor, or the person holding under him, as a trespasser. This is now the better, and the more intelligible American doctrine; and, in New York, in particular, since the action of ejectment by the mortgagee ie abolished, a court of law would seem to have no jurisdiction over the mort *79 gagee’s interest. He is not entitled to the possession, nor to the rents and profits; and he is turned over entirely to the courts of equity.