Sutliee, J., dissenting.
Mary Ann ■ Gibson was, at the time of the death of the testator, the only child of one of the three children of his sister, Nancy, mentioned in his will.
At the time of the making of the will, Mary Ann was in *139 the 27th year of her age, and the only child of her mother, Nancy, the second of the three children of Nancy, the sister of the testator. The testator, Samuel Stitt, died in February, 1844, and his will was probated in this State, where made, in August, 1847. Nancy Wilson, the second, died in March, 1849, having never been married, and having no other child than Mary Ann, then in the thirty-second year of her age.
The following is the material clause of the will for our construction :
“ I do also hereby give and devise to the children of my sister Nancy, for and during their natural lives, share and share alike, all the residue of the land,” etc.; “ and in case of the death of one or more of said children, leaving issue of his, her or their body at the time this devise takes effect, it is my wish, and I do hereby order and direct that such issue, for and during the term of their natural lives, shall take under this my will, precisely in the same manner as the immediate ancestor or ancestors of such issue would have taken, had she or they been then in being; and at the decease of any of said devisees who shall have taken for the term of his, her or their natural lives, I give and devise the share so given and taken as aforesaid intended, to the issue of such devisee so dying, share and share alike,” etc.
“ The word issue (says Chancellor Kent), is a word of more extensive import than the word child, though children, as well as issue, may stand in a collective sense for grand-children, when the justice or reason of the case requires it.” 4 Kent, 419. But in this will, as used, its meaning in the present case is precisely the same as would have been the word child.
It is admitted that Mary Ann Gibson, at the time of the making of the will was, and ever since then has remained, the only child of her mother, Nancy, to whom the testator devised the use of an equal third part of his lands ; and that upon the death of the mother so receiving the same for her life, the will expressly provides that the same shall belong to her issue, if any there then be. It is also admitted that Mary Ann Gibson, the sole child of her mother, survived her; but it is *140 denied that this child can possibly, by the laws of this State, be regarded the issue or child of her mother. In this conclusion, to which my brethren arrive, I find myself utterly unable to concur.
I do not question the general rule at common law, that the word issue or children, is generally to be understood legitimate children. And although under the canons of descent, which transmitted property in England, for the most pari through the male line of the blood of the ancestor, the maxim that the marriage ought to show the issue, and an illegitimate should be regarded nullius ‘filius, was not devoid of reason ; yet every reason on which the rule rested in relation even to descents, disappears when applied to the female line. There never was seen at common law any reason why such a rule should intervene between the inheritance of a deceased mother and her own child, which during life she had never forsaken, but which had always been the object of her affection and provident care ; and evidently at death the object of her solicitude.
But even the rule'of the English law, retaining and applying as it did and does, unquestionably this rigid rule of excluding all illegitimate children on the female as well as the male side, never excluded them from taking by devise.
The controlling rule of construction applicable to every .will is, to give effect to the intention of the testator, thereby expressed. And under this rule it has always been held in England that “ illegitimate children born at the time of the making of the will, and even those born after, may be objects of a devise or bequest, by any description which will identify them.” Thus, in the case of Metham v. Duke of Devon, the earl of Devonshire having devised three thousand pounds to all the natural children of his son, the late duke of Devon-shire, by Mrs. Menage, it was held (in 1718), by the lord chancellor, in the high court of chancery, that the children of Mrs. Henage born at the time of making the will, who were reputed to be the children of the duke of Devonshire, should take the bequest. It was held that their being reputed *141 to be the children of the duke, was a sufficient description of their persons to entitle them to the testator’s beneficence.
In England, I know, the possible right of natural children to take as devisees under the term “ issue,” or “ children,” was attempted to be very carefully restricted. Lord Eldon is reported to have once said, that “ in order to let in illegitimate children under a gift ‘ to children,’ it must be dear upon the terms of the will, or according to the state of facts at the time of malcing it, that legitimate children never could have taken.” But Mr. Jarman.,.in his treatise on Wills, remarks, that “ this principle has not been invariably adhered to. And while the rule would obviously apply and have no exception in those cases where, at the time of making the will, it was known to the testator there were illegitimate, and could be no legitimate children, I deny that the reported cases in England show that the doctrine was ever there recognized as a rule.”
“Every person is capable of being a ^legatee, unless particularly disabled by the common law or by statutes, as traitors, artificers going abroad,” etc. 2 Blackstone, 512.
Dlegitimate persons are not thus disabled, and always take whenever they are shown to be by the terms of the will the persones designates. It is only the question of intention which controls, just the same as in the case of all devisees, competent to take. And such I think is very clearly the weight of the English authorities.
I will here refer to a few cases upon this subject, to show the holding of the English courts, where natural children have been adjudged entitled to take as devisees under the term, “ children,” or “ issue.”
In the case of Wilkinson v. Adams, the question arose on the construction of the following clause of the will of John Wilkinson: “ And from and after the expiration of such term to the children which I may have by the aforesaid Ann Lewis, and living at my decease, or born within six months after, and if but one child, to such only child, and his or her heirs forever.” The will was dated November, 1806, while the testator was living with his wife, Mary Wilkinson, by whom he had no children; and the testator died in July, 1808. Upon *142 hearing, it was held by Lord Chancellor Eldon, and the three judges, Thompson, Black and Gibbs, upon proof that the only children the testator ever had were three illegitimate children by Ann Lewis, which were reputed to be his, that the illegitimate children were entitled, under the terms of the will, as the children described. 1 Yes. & B. 422.
So, too, in the case of Blundell v. Dunn (cited in 1 Madd. 433), the testator, by his will, 24th of November, 1796, gave certain money in the funds to trustees, “ in trust to pay my wife, or reputed wife, Sarah, the sum of 40i. yearly, for her life,” and his trade, stock and implements; and directed his executors “ to educate my children in the way they think proper,” and after some legacies, gave the residue and remainder of his estate and effects to his executors, “ in trust to divide the interest among my children that are now living, and also the child or children that my wife is now enciente with, at their respective ages of twenty-one years; and also to divide the principal at their respective ages of twenty-one years, and share and share alike; ” and died, leaving his reputed wife and three children, the youngest of whom she was enciente with, and the plaintiff and others, his next of kin. Before the master of the rolls (in 1808) it was held that the illegitimate children of the testator should take under the will, but as to the part of one of the children, living at the time of making the will, who afterward died, it was held to have vested in the crown; thus holding illegitimate children, including the one unborn at the time of making the will, and who could not inherit, capable of taking by devise under the name “ children.”
Again, in the case of Beachcroft v. Beachcroft and others, 1 Madd. 234, the same question arose, and a like holding was had.
Samuel Beachcroft resident in the East Indies, made his will, dated 24th March, 1805, containing the following clause: “ Out of the residue, I give and bequeath as follows : to my children the sum of pounds sterling, 5000 each; to the mother of my children, the sum of sicca rupees, 6000,” etc., and residue to his brothers and sisters. The testator died, a *143 bachelor, on the 20th of March, 1806, leaving the plaintiffs, as the bill charged, his only natural children, who also survived the testator.
On the hearing of the case, it was proved by written and parol evidence, that the plaintiffs were acknowledged by the testator as his children, and took his name, and that three of the five children plaintiffs were sent to the testator’s brothers, in England, during his life, and that the others were born previous to his will, and sent to England after his death.
The vice chancellor, in giving his opinion, said, “ Parol evidence is certainly admissible to show the state of the testator’s family, when he made his will.” . . . “ When he (the testator) made his will he was unmarried, and had five natural children.” . . . “It was natural to expect he would provide for them by his will; for whatever the law may say, nature is the same, and interests a father on behalf of his children, of whatever description they may be.” . _. “ If he had said, to my present children, they might certainly have taken as a class, to be ascertained by evidence; and being unmarried, he must have meant his illegitimate children, such as were reputed as his children, for there is no imperative rule that by the term children, must always be meant legitimate children.” . . “No case has been found where, when the word children has been used in the will of a putative father, who has no legitimate children, it has been held that illegitimate children can not take.” . . . “Every word of a will must be looked into.” . . . “ The testator does not appear on the face of the will to be unmarried; and evidence is admissible to find persons to fit the description. All the authorities lead to this conclusion. The word present is not introduced into this will. Can, then, ‘ my children ’ be construed in the same manner as if the words were, to my present children. It has been argued that this testator looked forward to future legitimate children, and therefore there is nobody to compete with these plaintiffs, respecting the meaning of the words ‘ my children.’ ”... “ The general presumption is that a man sitting down to make his will designs a benefit to some existing object.” . . . “ It is ex *144 travagant to suppose that this testator had only future possible children in view, disregarding wholly and leaving destitute those whom he was in the habit of denominating and treating as his children — that he should manifest a paternal solicitude for children who did not yet exist, and at the same time exhibit none for those who did,” etc. “ I think, therefore, it is clear that existing persons were meant, and that they take as in the case of Wilkinson v. Adams, as designated persons.”
The same question again arose in the case of Lord Woodhouselie and others v. Sir Hew Dalrymple and others, in the high court of chancery, in 1817.
Sir James Henry Craig, by his will dated 'May 7, 1811, among several legacies to different persons therein named, gave “ to the children of the late Charles Ker, who should be living at the time of his (the testator’s) decease, £2000, to be equally divided among them.” By the affidavit of Mary Ker, widow, in support of a state of facts laid before the master to whom the case had been referred, it appeared that John Charles Ker (in the will called Charles Ker) intermarried with the deponent in 1792, and that after such marriage, the said John Charles Ker had not any child born, but that before the marriage he had cohabited with the deponent for many years, and had by her five children (of whom the three claimants of his legacy of £2000 were the only children living at the time of the testator’s decease), who had all been baptized in the parish church of Clifton as the children of John Charles and Mary Ker, shortly after their respective births.” The affidavit also stated that deponent was informed and believed the testator was acquainted with the circumstances of the family, and that two of the children were personally known to him; and that she believed the three surviving children were the persons designated by him in his bequest “ to the children of the late Charles Ker.” It further appeared that John Charles Ker was lost at sea shortly after his marriage to deponent.
On hearing before Eldon, lord high chancellor, Grant, master of the rolls, and Plumber, vice chancellor, the court say, *145 . . . “ Those cases which have laid down the rule most strictly, admit that it is possible for illegitimate children to-acquire a reputation as children ; and to that extent evidencedehors the will must be received. In others, the courts have-gone further, and have admitted circumstances to show the-testator’s intention in favor of the particular individuals. In this case, the testator certainly meant to give to somebody, and there are no others to whom he could mean to give by the description he has used. Therefore the present claimants are entitled.” 2 Merrivale’s Rep. 419.
See, also, the case of Baley v. Snelham, 1 Sim. & Stuart, 78.
But the cases cited are sufficient for the purpose. And,, indeed, they are all consistent with the most rigid English rule expressed by Lord Coke, as follows:......“As Littleton saith, a bastard is quasi mdlius filius, and can have-no name of reputation as soon as he is born,” . . . “ but after he be born, and that he hath gained by time a reputation to be known by the name of a son, then a remainder limited to him by the name of the son of his reputed father is good.” Coke Litt. 3b.
Two things are to be remarked as to all the English authorities here cited. The cases all relate to the illegitimate issue of the father, where their identity must depend, unlike that of the issue of the mother, upon reputation merely. Again, it is to be remembered the word issue was there, as here, susceptible of the same meaning as heir, or those who might possibly inherit from the person of whom denominated “ the issue.”
But it appears evident from the authorities referred to, that while a natural child could not take as an heir or by descent, there never was any rule of law in England precluding a natural child taking, as devisee, by purchase, as in this case; and that, too, as the natural child of the father between whom the fact of the relation, depending as it did, for the most part, upon mere reputation, was necessarily uncertain. But in England, as here, the controlling rule in construing the will or the grant, was to give effect to its real meaning. And to ascertain the meaning of the will or deed, while reference is only made to the language of the instrument, all the circum *146 stances and relations were permitted to be shown by proof as' the same existed in the lifetime of the testator, in order to a determination of the personae designates, and to give effect to the demise or grant as expressed by the will.
Now, under the guidance of this rule, that the intention of the testator is to receive full effect, as expressed in his will, as exemplified by the English authorities referred to, I can not but regard it extremely doubtful, whether the courts of England even would hesitate in determining Mary Ann Gibson to be the person designated in this will, as “ the issue ” or child of her mother Nancy, and entitled to take the estate by purchase devised to such issue. It must be admitted, she certainly would be so entitled to take as devisee, unless it can be shown that in the contemplation of the testator, as well as in law, her mother died childless, without “ issue ” of her body.
The law of England as to the capacity of illegitimate children to take under the description of issue, or children, is thus expressed by a learned English jurist:
“ It is settled that natural children, having acquired, by reputation, the name and character of children of a partiéular person, prior to the date of the will, are capable of taking .under the description of children. But the term son, child, issue, and every word of that species, is to be taken as prima facie to mean legitimate child, or issue; so that if a testator merely bequeath to his own children, or the children of another person, or to one or more of them, and nothing appears from the will sufficient to show that he intended natural children then in existence, then that class of children will be excluded. It seems, indeed, necessary to enable illegitimate children to take as children, that they should be personae designates, either by express gift nominatim, or by manifest and incontrovertible intention apparent on the face of the will, that they were meant to be included in the term ‘ children.’ That intention, however, can only be shown from the will, for ■evidence can not be received to prove that they were intended by the testator to be included in that description. The only testimony admissible in those cases is that the children had acquired 'the name and character of children by reputation; *147 and when that character is so established, it remains for the will to show whether they were designated to take under the description of children, the prima facie intention and legal being to their disadvantage, as before noticed.” Roper on Legacies, p. 80.
The cases already cited are a.ll illustrative of this doctrine, as applied in England. And I am not aware of a single case in England where a devise had been made to the issue of an unmarried woman who had illegitimate issue or child living at the date of the will, and died leaving no other issue, in which it has ever been held, upon proof of such fact, that ■such child could not take as devisee under the will.
But it is said that in this case, although the illegitimate child was nearly thirty years old, and married, and her mother of an advanced age, and unmarried, it is possible the testator may have contemplated that the mother would, at some time in future, yet marry, and raise a family of legitimate children.
It is very true the possibility of issue was not ye't extinct in contemplation of law, but I think it was in that of the testator; and his intention should receive effect from our construction of his will. A perusal of this will, I think, clearly shows that the testator’s only object in making a will at all, was to preserve andperpetuate his property to his heirs at law, in its legal course of descent. He accordingly appointed executors to protect and hold the property for those who would have been entitled to it by inheritance, if he had made no will. He directed that the property should belong to the same persons, and in the same proportions, as the same would have gone without the will. But the main object of the will is clearly shown to be to give a greater perpetuity to the property in its course of descent, than it would otherwise have. And so the testator provides that his immediate heirs, the children of his sister, shall only have a life use of their respective shares; “ and in case of the death of one or more of said children, leaving issue of his, her or their body, . . . such issue shall take under this . . . will precisely in the same manner as the immediate ancestor or ancestors of such issue would have taken, had she they been *148 then in being; and at the decease of any of said devisees,, who shall have taken for the term of his, her or their natural lives, I give and devise the share so given, and as aforesaid intended, to the issue of such devisee so dying, share and share alike, for their natural lives respectively; and again at the death of the issue last aforesaid, or any of them, I further give and devise the respective share or estate of said-issue to the issue of such issue, or any of them, share and share alike, for the term of their natural lives, and in this-manner down in entailment as far as may be allowed by the statute in such case made and provided.”
Admitting, however, in the absence of a single parallel ease to this, even among the English reports, in which it is held that the issue could not take, that by analogy to some case there, it can be claimed that this devise might be held to-fail, how stands the case under our statute ? Can it be possible that in the absence of any other child, Mary Ann Gibson is not, by the laws of Ohio, to be regarded “ the issue,” or child, of her unmarried deceased mother ?
If positive legislation can make a natural child the issue and also the heir of the mother, then I hold that by force of our statute law, Mary Ann Gibson was, and is, the issue, ehild and heir of her mother Nancy; and upon the death of her mother, was entitled by either description to take by purchase, as devisee, in fee tail, her third of the land so devised, and held by the mother during her life.
Our statute of 1831, provides as follows:
“ Sec. 12. . . . bastards shall also be capable of inheriting, or of transmitting inheritance on the part of their mother, in like manner as if they had been born in lawful wedlock.
“ Sec. 13. That where a man having by a woman one or more children, shall afterward intermarry with such woman, such child or children, if recognized and acknowledged by him, as his child or children, shall be thereby legitimated; issue of marriages also deemed null in law, shall nevertheless-be legitimate.” Chase’s Stat. 1790.
This section 13, it will be observed, requires a natural child *149 to be reputed and acknowledged or recognized by the father, as his child. in order, in such a case, to become his heir, or issue in law, as is by section 12 the natural child of the mother, known to be such, whether reputed and recognized or not. Our statute, therefore, places the natural child of the mother on the same ground by the fact of the relation to the mother, of that of the natural child of the father whose relation was proved to the father by reputation and being recognized and acknowledged by him.
Section 12 in the first of the two cases provided for by our statute, constituted the natural child the heir of its mother. Section 13 constitutes the natural child, under the circumstances there expressed, the heir of its father, as well as of its mother.
In this case, then, under the provisions of section 12, Mary Ann Gibson, being the only child of her mother, and capable of inheriting or of transmitting inheritance on the part of her mother, in like manner as if born in wedlock, she was, in this .State, in law the legal issue and heir, as she was in fact the child of her mother. She could not, therefore, be regarded as filia nullius, as not the child of her mother, but as answering to the description of the person to whom her mother’s share was devised to go upon her death.
The rule that statutes removing legal disabilities should receive a liberal construction, seems to me peculiarly applicable to our legislation upon this subject. It is true, this statute of 1831 received so limited a construction in the case of Lessee of Little v. Lake, 8 Ohio Rep. 289, as to leave some disabilities upon the child.
This limited construction was disapproved by the legislature, which thereupon removed the disability so expressed by such construction. And this court, in the case of Lewis v. Eutsler et at., 4 Ohio St. Rep. 354, seem to have disapproved the construction so given in the case of Little v. Lake.
But as between the mother and the illegitimate child, the language of the statute admits of no restriction, and the court did not attempt to give any by construction. By force of that decision, as well as by the words of the statute, Mary *150 Ann Gibson, at the time of the making, and the probate of the will, and at the time of the death of her mother, was the issue of her mother, and as capable of taking as her heir in law, upon surviving her mother, as though born in lawful wedlock. In every relation she sustained toward her mother, under the law of this State, she was the issue and child of her mother, without any legal disability. Under this state of the case, then, Stitt, the testator, within this State, a,nd presumed to know the law, as well as the facts of her relation, made his will that on the decease of the mother, the portion so devised for the use of the mother during her life, should, at her death,, go to Tier issue, or child.
It is provided in the State of Kentucky that, “bastards shall be capable of inheriting and transmitting an inheritance on the part of or to the mother; and bastards of the same mother shall be capable of inheriting and transmitting an inheritance on the part of each other, as if such bastards were born in lawful wedlock of the same parents.”
The case of Black v. Cartmell, 10 B. Monroe, 188, involving the same question presented in this case, arose under that statute. In that case the testator, in the body of his will,, made on the 15th of April, 1833, devised different portions of his estate to each of his four children, by the last clause of his will, directing the part intended for his. daughter, Mrs. Higdon, to be held by trustees for the benefit of herself and husband during their joint lives, or continuance in wedlock ; providing that if she should survive her husband, the trustees should release to her, to use and dispose of, as she should think proper. By a codicil, made on the 26th of May, 1833, the testator, reciting that by his will he had devised to his daughter Catharine, as stated, devised the same estate for the exclusive use of his daughter Catharine Higdon, during her natural life; “ and if she die without lawful issue of her body, then the said estate is to pass and vest by the will,” in his, the testator’s lawful heirs, and after the death of his said daughter, if she died without lawful issue, the same was tó be sold and equally divided between the other three children. Catharine Higdon survived her husband, and after his death had an *151 illegitimate son, her only issue, who claimed the estate (200 acres of land) devised to his mother, as the devisee of the remainder, as the lawful issue named in the will.
The supreme court of Kentucky, in construing that will, say, . . . “ the only question is whether, by force of the word lawful, as applied to issue, the illegitimate son is to be excluded.” p. 189. . . . “ Her illegitimate son being under our law her heir, would in this sense be the lawful heir of her body, either as devisee under the will, or as heir to his mother, if she had taken an estate of inheritance.” . . . “ But,” say the court, “ there is not the slightest ground, either in or out of the will, so far as appears by the record, for supposing that the father anticipated that his daughter, then a married woman, might have an illegitimate child, or that he intended to provide against it. Nor can it be assumed, or even presumed, that if she had had an illegitimate son when the will was made, her father would, on account of her fault, have excluded his unoffending grandchild from all participation in his estate.” And under this view, they say, after the first argument of that case, “ we decided the case on the assumption that ‘ lawful issue ’ should be understood merely as designating such issue as might, by law, inherit. But as the position that illegitimate issue might fill the description of lawful issue, was apparently inconsistent in itself, and certainly inconsistent with the tenor of the British, authorities, a reargument was granted.” And the court add, that “ upon further consideration, while the word ‘ issue ’ is not wholly technical, but includes all the offspring and descendants, yet as the phrase ‘ lawful descendants, or offspring,’ would clearly exclude illegitimate or unlawful descendants, . . ’ the fáct that an illegitimate child may inherit from its mother, seems hardly to be a sufficient ground for saying that he is- embraced in the words ‘ lawful issue.’ ” The court, therefore, reluctantly held that the illegitimate son born after the making of the will, although the issue of his mother, was not embraced in the description “ legal issue,” and so could not take under that will as the party designated thereby.
But in the case before us, there is every presumption *152 in favor of the testator’s fully understanding the situation and relations of the object of his beneficence; and no proof to rebut such presumption. The will is, therefore, to be construed the same as if all the parties, at the time of making the will resided in the same town, and within this State. These considerations of themselves would seem to be sufficient to have overcome the objections found in the word laivful in the Kentucky case, if they had existed in that case. Rut in this •case, the person, Mary Ann, was in esse, and an adult, long before the making of the will, and that fact is presumed to be well known to the testator when making his will; and the record shows not a single fact to contravene that presumption. And beside this, the obstacle in the Kentucky Case— the word lawful — is not used in this will.
But in this case, if there were any doubt whether the only child of Nancy was included in the description “ her issue,” she being the sole heir apparent when the will was made, and left the sole heir of her mother in fact, there is a rule of construction quite applicable. It is a rule of law that the heir is not to be disinherited without an express devise, or necessary implication. It is said that there must appear in the will to be an actual gift to some other definite object to rebut this natural presumption. 2 Jarm. 741; 1 Jarm. 465; 2 New Rep. 214; 6 Term Rep. 610; 7 Cow. 71, 187; 9 Johns. 104; 19 Ohio Rep. 325; 1 Ohio St. Rep. And the construction I insist tip on, transmits the property precisely as the law would have sent it, if no will had been made. And by the rule of construction referred to, this construction is always due the heir in even a doubtful case, since, independent of the will, the mother’s portion would have belonged to the mother’s only child who has survived her.
But the only question presented by this will, upon which a difference of opinion exists, is that of the intention of the testator. My brethren hold that, from the terms of the will, with the legal presumptions arising from the extraneous facts, it appears that Mary Ann Gibson is not the person to whom, on the death of her mother, leaving her an only surviving child, the testator intended the mother’s share should go. I *153 hold that she is the very person to whom, by the language of the will and every legal presumption arising from the facts, the testator intended as the person designated, under the existing circumstances, to receive the share of her mother.
I, therefore, think that effect can only be given to the legally expressed intention of the testator in this case, by regarding Mary Ann Gibson to be in law, as she is in fact, the surviving issue or child of her mother, and as such the person entitled, under the will, to take that portion of the estate devised to the mother during her life.